Rudolph DEL REAL, Jr., Rodolfo Del Real, Jr. III, and Adel Dabalos, Guardian ad Litem for Eric and Valerie Del Real, Minors, Plaintiffs,

v.

UNITED STATES FIRE INSURANCE CRUM & FORSTER, Defendant.

No. CIVS–97–0175 DFLJFM.

United States District Court,
E.D. California.

March 31, 1998.

Douglas H. Drake, Sacramento, CA, for plaintiffs.

Charlotte E. Hemker–Smith, Hemker–Smith and Associates, Sacramento, CA, for defendant.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

This is an insurance coverage dispute arising from an automobile accident. In an earlier state court proceeding, plaintiffs obtained a personal injury judgment against Manke Trucking ("Manke") and Gilbert Vidrios, the employee of Manke operating the truck involved in the accident. Plaintiffs now seek to recover the unpaid portion of the judgment against two insurance policies issued by United States Fire Insurance Company Crum & Forster Insurance ("U.S. Fire") to Xtra Corporation ("Xtra"), the company that leased to Manke the trailer pulled by Vidrios. Xtra obtained a dismissal with prejudice from the state court proceeding and is not a defendant in this action. Plaintiffs and defendant have made cross-motions for summary judgment.

## I. FACTUAL BACKGROUND

On October 4, 1994, Penney Del Real was killed in a multi-vehicle accident. Plaintiffs filed a wrongful death action in the Superior Court of California, County of Sacramento, against Manke Trucking ("Manke"); Gilbert Vidrios, Manke's em-

ployee driving the truck involved in the accident; and Strick Leasing ("Strick"), a subsidiary of Xtra Corporation ("Xtra"), the owner-lessor of the trailer pulled by Vidrios' truck. Strick and Xtra Corporation were dismissed with prejudice from the action. (Def.'s Ex. L). Manke and Vidrios stipulated to liability, and United National Insurance Company, Manke's insurer, agreed to pay the remaining policy limits of $750,000. (*See* Def.'s Exs. M, M1). Plaintiffs obtained a damage award of $2,059,539. (Def.'s Ex. N). After deducting the United National policy proceeds, an unpaid amount of approximately $1,309,539 remains.

The trailer involved in the accident was owned by Strick and leased at the time to Manke. Manke and Strick entered into a lease agreement on February 16, 1994, for a term of one year "or other period." (Def.'s Ex. C). The terms of the lease required Manke to obtain liability insurance for the trailer with a minimum policy limit of $1,000,000, and provided that Manke would be a full insurer of the equipment. (*Id.* at ¶ 9). The lease also included a hold harmless clause requiring that Manke indemnify Strick for all loss or damage resulting from the use of the trailer. (*Id.* at ¶ 8). The policy obtained by Manke from United National named Xtra as an additional insured.

At the time of the accident, Xtra held two U.S. Fire insurance policies on the trailer: a primary policy with a policy limit of $1,000,000, (Def.'s Ex. F), and an umbrella policy with a policy limit of $15,000,000 (Def.'s Ex. G). U.S. Fire issued both policies to Xtra, a Massachusetts corporation, in Massachusetts. Vidrios and Manke are not named insureds or listed as additional insureds on either policy. Plaintiffs are assignees of any rights Vidrios and Manke may have under the policies. (Drake Decl., Assignment of Rights).

The U.S. Fire primary policy includes a Business Auto Coverage Form and an endorsement entitled "California Changes—Leasing or Rental Concerns—Contingent Coverage" ("California Changes endorse-

ment"). (Def.'s Exs. F2, F3). In the Business Auto Conditions section of the Business Auto Coverage Form, the policy provides that "while a covered 'auto' which is a 'trailer' is connected to another vehicle, the Liability Coverage this Coverage Form provides for the 'trailer' is ... [e]xcess while it is connected to a motor vehicle you do not own." (Def.'s Ex. F2 at 6–7). The California Changes endorsement limits coverage for a "leased auto" where other insurance is available: "If there is other available insurance, (whether primary, excess or contingent) the LIMIT OF INSURANCE is only for the amount by which the applicable compulsory or financial responsibility law limits exceed the limits of the available insurance." (Def.'s Ex. F3 at ¶ A.2). The parties agree that the trailer is a "leased auto" as defined under the policy, and that Manke's United National policy constitutes other available insurance.

The U.S. Fire primary policy also includes an MCS–90 endorsement that requires that the insurer

agrees to pay, within the limits of liability described herein, *any final judgment* recovered against the insured *for public liability resulting from negligence* in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically descried [sic] in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

(Def.'s Ex. F, MCS–90 Endorsement) (emphasis in original). Furthermore, the endorsement states that

no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company form [sic] liability or from the payment of any final judgment, within the limits of liability herein de-

scribed, irrespective of the financial condition, insolvency or bankruptcy of the insured.

*(Id.).* At the same time, the insurer possesses a right of reimbursement *"for any payment that the company would not have been obligated to make* under the provisions of the policy except for the agreement contained in this endorsement." *(Id.)* (emphasis in original).

The umbrella policy contains an Automobile Limitation Endorsement that limits coverage for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of any 'Automobile'" to the coverage provided by the "Underlying Insurance." (Def.'s Ex. G1). "If coverage is not provided by such policies, coverage is excluded from this policy." *(Id.)*. The Schedule of Underlying Insurance lists only the U.S. Fire primary policy, and not the United National policy held by Manke. (Def.'s Ex. G, Schedule A).

## II. CHOICE OF LAW

As an initial matter, the court must decide which state's law applies. Because defendant concedes that plaintiffs are entitled to bring a direct action, (Def.'s Reply at 2:23–25), the only potential conflict of laws presented is whether Oregon law or California law should control the extent to which insurance provided to permissive users may be limited.

■ Under *Stonewall Surplus v. Johnson Controls,* 14 Cal.App.4th 637, 648, 17 Cal.Rptr.2d 713 (1993), an insurance policy covering multiple risks in many jurisdictions may be treated as a collection of separate policies insuring risks located in the states that the insured does business. In *Stonewall Surplus,* a battery manufactured in California by a corporation operating worldwide exploded, giving rise to a personal injury lawsuit. The primary insurance policy included endorsements for eleven states, not including California, and

the underwriting submission used to obtain the excess policy listed many states where the defendant maintained manufacturing and sales and service facilities. Adopting the multiple risk approach, the court held that the defendant and its insurers could reasonably expect the laws of California to apply because the battery was manufactured in that state. *Id.*

■ U.S. Fire's liability insurance policy is similar to the policy in *Stonewall Surplus.* Following the multiple risk approach, the court finds that California law applies in the interpretation of this contract. The argument for applying California law to the policies in the present case is even stronger because the insurance policies include California amendatory endorsements, from which the court may infer the parties' consent to application of California law when liability arises from an accident in this state.

■ Moreover, the court also finds that California law should apply under the governmental interest analysis used by California courts for resolving conflicts of laws. *See Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 583 P.2d 721 (1978). If two states have conflicting laws, but only one state has an interest in applying its law, there is no true conflict, and the law of the interested state applies. *Id.* at 163, 148 Cal.Rptr. 867, 583 P.2d 721. Only California has an interest in applying its law under the facts of this case. Oregon has no discernible interest in applying its laws governing insurance coverage extended to permissive users where the trailer was used in California, the accident occurred in California, and no significant connection exists between the permissive user and the state of Oregon. The fact that the trailer was registered in Oregon to Strick is insufficient to create a state interest, as is the fact that the policy also included an Oregon endorsement.[1]

---

1. The policy includes endorsements from many states in addition to California and Ore-

gon. *(See* Def.'s Ex. F, Master Forms List).

## III. COVERAGE UNDER THE INSURANCE POLICIES

### A. The Primary Policy

Defendant contends that the primary policy provides no coverage because the California Changes endorsement reduces payable proceeds to zero with respect to "leased autos" when other insurance satisfying the minimum financial responsibility requirements is available, and that all of the evidence shows that the parties to the insurance contract did not intend to provide any coverage to permissive users.[2] Plaintiffs assert that the California Changes Endorsement is unenforceable because the limiting language is not plain and clear, California law does not permit limitation of coverage to permissive users of trailers, and because the MCS–90 Endorsement provides coverage regardless of the California Changes Endorsement.

#### 1. The Plain, Clear, and Conspicuous Requirement

Plaintiffs contend that the language in the California Changes Endorsement referring to the "applicable compulsory or financial responsibility law" is too vague to be enforceable.[3] A term limiting liability in an insurance policy is ineffective against an insured if it is not conspicuous, plain, and clear. *20th Century Ins. Co. v. Liberty Mut. Ins. Co.*, 965 F.2d 747, 751 (9th Cir.1992). The insurer bears the burden of establishing that this test is met. *National Auto. Cas. Ins. Co. v. Stewart*, 223 Cal.App.3d 452, 462, 272 Cal.Rptr. 625 (1990). Whether a term is conspicuous, plain, and clear is a question of law. *See Jauregui v. Mid–Century Ins. Co.*, 1 Cal. App.4th 1544, 1548, 3 Cal.Rptr.2d 21 (1991).

The California Courts of Appeal are split on the enforceability of a limitation of liability with respect to permissive users to the amount required by financial responsibility laws. The Sixth District finds this language, at least when it is conspicuous, to be enforceable. *Hartford Casualty Ins. Co. v. Mid–Century Ins. Co.*, 26 Cal. App.4th 1783, 1787, 32 Cal.Rptr.2d 351 (1994) (limitation of coverage for permissive user); *Mid–Century Ins. Co. v. Haynes*, 218 Cal.App.3d 737, 740–41, 267 Cal.Rptr. 248 (1990) (same). "[T]he language is susceptible of but a single interpretation: that coverage ... is limited as set forth in the Financial Responsibility Law." *Haynes*, 218 Cal.App.3d at 740, 267 Cal.Rptr. 248. The Third District finds that this language is not clear and unambiguous, and is therefore unenforceable. *Jauregui*, 1 Cal.App.4th 1544, 3 Cal. Rptr.2d 21 (invalidating rental car contract provision limiting coverage for permissive users). *Hartford Casualty* is the more recent California opinion. Contrary to plaintiffs' assertion, the Ninth Circuit has not taken a position on this split.[4]

An insurance policy should be read from the perspective of the average layperson, not that of an insurance expert or attorney. *20th Century*, 965 F.2d at 751. The average layperson would assume that the reference in the contract to the applicable financial responsibility law is to the familiar liability policy limit requirements of $15,000 for a single person in one accident for bodily injury or death, $30,000 per accident for bodily injury or death where there is more than one injured party, and

---

2. Plaintiffs draw a fine distinction between "coverage" and "liability." The distinction is immaterial, in that if no proceeds are owing on the policy, defendant's motion for summary judgment must be granted whether the result is termed "no coverage" or "no liability."

3. Plaintiffs do not assert that the provision is inconspicuous. The provision, set forth on the California Changes Endorsement form, is readily located, and is set forth conspicuously in the first section entitled Liability Coverage.

4. In *20th Century*, the court invalidated a provision in a rental car contract limiting coverage to the financial responsibility limits. The court based its decision on the fact that the parties agreed that the provision was inconspicuous, not because the language of the provision was unclear or ambiguous. *20th Century*, 965 F.2d at 754.

$5,000 for property damage in one accident, as established in Insurance Code § 11580.1 and Vehicle Code § 16056. The average layperson would further assume that if the lessor procures the required minimum coverage, the U.S. Fire policy provides no coverage.

■ Insurance Code § 11580.05 provides that "this article expresses the total public policy of this state respecting the content of [automobile liability insurance or motor vehicle liability insurance] policies." Insurance Code § 11580.1 establishes the minimum policy limits stated above for "automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle." Trailers are "motor vehicles" as defined by the Insurance Code, and are therefore included within the group of vehicles that may be covered by "automobile liability insurance," even though the definition of "automobile" in § 11580.06 is limited to four-wheeled vehicles. Cal.Ins.Code §§ 383.6, 11580.06.

Plaintiffs contend that the financial responsibility limit is ambiguous in the present case because Vehicle Code § 16500.5 specifically addresses commercial vehicles. The court rejects plaintiffs' attempt to manufacture ambiguity where none would ordinarily exist. Even though Vehicle Code § 16500.5 appears to facially apply to the present facts, assuming as the parties do that the trailer weighs over 7,000 pounds, this code section is taken out of context. Vehicle Code § 16500.5 requires only that owners maintain proof of financial responsibility consistent with Public Utility Commission requirements.[5] The section does not independently establish any applicable liability insurance requirements.[6]

■ The court finds that *Haynes* and *Hartford Casualty* provide the governing rule on the facts of this case. The reason-

ing followed in *Jauregui* may have limited applicability in the rental car context, but is not persuasive in interpreting the meaning of terms in this commercial liability insurance contract. Even assuming that the precise amount to which the coverage of a permissive user is reduced is ambiguous or difficult to determine, the insurance policy plainly limits coverage to the minimum required by law. The United National insurance policy provides coverage well in excess of the minimum level required by Insurance Code § 11580.1, and well in excess of all possible interpretations of "minimum financial responsibility law" set forth by plaintiffs.

Accordingly, the court finds that the language limiting coverage in the California Changes endorsement is sufficiently conspicuous, clear, and ambiguous to be enforceable.

*2. Limitation of Permissive User Coverage*

California expressly permits limitation of coverage extended to permissive users in automobile liability insurance policies to the minimum levels provided in Insurance Code § 16056. Cal.Ins.Code § 11580.1. As explained above, plaintiffs' contention that § 11580.1 is inapplicable because a trailer is not an "automobile" lacks merit.

*3. The MCS–90 Endorsement*

■ Plaintiffs contend that Vidrios and Manke are permissive users, and therefore insureds under the U.S. Fire policy, and thus that the MCS–90 endorsement extends coverage to plaintiffs as judgment creditors of Vidrios and Manke. Because the endorsement expands rather than limits coverage, plaintiffs bear the burden of proving that they fall within the scope of coverage provided by the endorsement. *Stewart,* 223 Cal.App.3d at 462, 272 Cal. Rptr. 625.

---

5. No evidence exists suggesting that Strick is subject to any PUC requirements.

6. *See* Vehicle Code § 1500.5(d)(1). Subsection (d)(3) provides that the proof of financial responsibility may be supplied by depositing $500,000 with the Controller.

■ Plaintiffs are not entitled to recover under the MCS–90 endorsement for two reasons.[7] First, Manke and Vidrios are not "insureds" under the MCS–90 endorsement. The endorsement obligates the insurer only to pay "any final judgment recovered against the insured." It is ambiguous whether the term "insured" is limited to the named insured or also includes lessees and other permissive users. Because the exact language used in the endorsement is mandated by a federal regulation and not subject to modification by the parties, the definition of "insured" found in the policy is not conclusive. *See* 49 C.F.R. § 387.15 (1994).

The language of the endorsement, the relevant federal regulations, and the intent of the parties all indicate that the term "insured" refers only to the named insured. In the MCS–90,

> The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is unlikely that the term "insured" was intended to include lessees. Lessees are not parties to the insurance contract, and cannot be said to have knowingly entered into an agreement to reimburse the insurance company for payments made on the MCS–90 endorsement. The named insured cannot reasonably be understood to have agreed to reimburse the insurance company for payments made to judgment creditors of lessees. The relevant federal regulations reinforce the conclusion that only the named insured is an "insured" under the endorsement: "insured and principal" are defined as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." 49 C.F.R. § 387.5 (1994).

■ Effecting the mutual intent of the parties is the ultimate objective of interpreting the policy. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Extrinsic evidence is admissible to determine the objectively reasonable expectations of the insured in resolving ambiguities in the insurance policy. *See id.* at 1265, 1272, 10 Cal.Rptr.2d 538, 833 P.2d 545; *Cooper Cos. v. Transcontinental Ins. Co.,* 31 Cal. App.4th 1094, 1107 n. 9, 37 Cal.Rptr.2d 508 (1995). In the present case, the extrinsic evidence shows that the parties to the insurance contract did not intend any coverage for lessees of trailers, and that the policy premiums were significantly lower than if such coverage had been intended. (*See* Goldsmith Dep'n at 37:25–41:23, 73:22–74:14, 78:16–23; Kingston Dep'n at 24:14–20). Moreover, the evidence shows that the MCS–90 endorsement was obtained by Xtra for the limited purpose of operating five stepvan type mobile service trucks in the St. Louis, Missouri area. (Def.'s Ex. B, Tamburelli Decl. at ¶ 4).

■ Second, the MCS–90 endorsement provides coverage if public liability, defined as "bodily injury, property damage, and environmental restoration," arises "in the operation, maintenance, or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980." (Def.'s Ex. F, Endorsement for Motor Carrier Policies at 1). "Motor vehicle" is defined in the MCS–90 Endorsement as "a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof." (*Id*). The federal regulations in effect at the time of the accident limited

---

7. The cases discussed by the parties provide no assistance in determining the applicability of the MCS–90 endorsement. *See National Am. Ins. Co. v. Central States Carriers, Inc.,* 785 F.Supp. 793 (N.D.Ind.1992) (insurer of lessor entitled to reimbursement from the responsible parties); *Planet Ins. Co. v. Transport Indemnity,* 823 F.2d 285 (9th Cir.1987) (triplease case involving an analogous BMC–90 endorsement).

applicability of the financial responsibility requirements to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce" and for-hire motor carriers of hazardous materials.[8] 49 C.F.R. §§ 387.3(a), (b) (1994). "For-hire carriage" is defined as "transportation of property by motor vehicle," and "motor carrier" is defined as "a common, contract, or private carrier of property by motor vehicle." 49 C.F.R. § 387.5 (1994).

Defendant is an equipment lessor of trailers, and not a for-hire motor carrier. (Def.'s Ex. B, Tamburelli Decl. at ¶ 4).[9] Plaintiffs offer no contrary evidence. Because Xtra is not a for-hire motor carrier, the leased trailer cannot be a motor vehicle subject to the financial responsibility requirements of the Motor Vehicle Act. The trailer is therefore not a covered vehicle under the MCS–90.

### B. The Umbrella Policy

 U.S. Fire contends that the umbrella policy provides no coverage for Manke and Vidrios because under the Automobile Limitation Endorsement, there is no coverage if the underlying insurance provides no coverage. Plaintiffs take the position that even if U.S. Fire's primary policy provides no recovery because the California Changes endorsement reduces the policy limits to zero, the umbrella policy still provides coverage. Plaintiffs bear the burden of proof of establishing coverage.

 It is well established under California law that excess and umbrella insurance policies require exhaustion of underlying primary policies before a duty to defend or to pay proceeds arises. *Community Redevelopment Agency v. Aetna Casualty and Surety Co.*, 50 Cal.App.4th 329, 339, 57 Cal.Rptr.2d 755 (1996); *see also Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir.1994). The only underlying insurance scheduled in the umbrella policy is the U.S. Fire primary policy, not the United National policy. Regardless of plaintiffs' distinction between "no coverage" and coverage with a policy limit of zero, if the U.S. Fire primary policy is not exhausted, there can be no recovery against the umbrella policy.[10] This bar to recovery applies without regard to whether an umbrella policy may limit coverage to permissive users under Insurance Code § 11580.1.

### IV. CONCLUSION

The court finds that plaintiffs are not entitled to recover any proceeds under the U.S. Fire primary policy, the MCS–90 endorsement attached to the primary policy, or the umbrella policy. Accordingly, defendant's cross-motion for summary judgment is GRANTED, and plaintiff's cross-motion is DENIED.

IT IS SO ORDERED.

---

8. Defendant asserts that the regulations implementing the Motor Carrier Act do not contemplate inclusion of owner-lessors of trailers. Defendant relies in part on 49 C.F.R. § 387.21, a regulation adopted in 1997. Because the insurance policy was issued in 1994, this section does not aid the court in interpreting the meaning of the policy's terms.

9. The policy contains the MCS–90 endorsement only because Xtra maintains D.O.T. licenses for a small number of vans in St. Louis, Missouri.

10. Plaintiffs assert that the term in the Automobile Limitation Endorsement is not an exclusion, but a "following form" provision with no meaning other than that coverage exists only where an underlying policy exists. This distinction is of no material significance.