[730 NYS2d 550]

STEVE PIERRE, Respondent-Appellant, v PROVIDENCE WASHINGTON INSURANCE COMPANY, Appellant-Respondent.

Second Department, October 1, 2001

APPEARANCES OF COUNSEL

*Schindel, Farman & Lipsius, L. L. P.,* New York City (*Laurence J. Rabinovich* of counsel), for appellant-respondent.

*Bertram Herman, P. C.,* East Norwich, for respondent-appellant.

## OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether the MCS-90 endorsement to a policy issued by the defendant, Providence Washington Insurance Company (hereinafter Providence), to Blue Hen Lines, Inc. (hereinafter Blue Hen), a licensed interstate motor carrier, requires Providence to pay the plaintiff damages for his personal injuries pursuant to a judgment against the driver and owner of a tractor leased to Blue Hen. It is undisputed that the driver and the owner of the tractor fall within the policy definition of an "insured."

On November 30, 1994, the plaintiff's motor vehicle was involved in an accident with a tractor-trailer on St. John's Place in Brooklyn. The trailer portion of the tractor-trailer was owned by Blue Hen. The tractor portion of the tractor-trailer was owned by Preston Conquest and operated by Steve Harris. The tractor was leased by Conquest to Blue Hen pursuant to a lease which required Blue Hen to obtain and pay for insurance covering public liability for personal injuries. Pursuant to the lease, Conquest was required to provide a driver for the tractor, and it provided Harris as the driver.

Providence issued a commercial motor vehicle policy to Blue Hen which did not list either Conquest or Harris as named insureds. However, it is undisputed that Providence did insure the tractor and its driver, pursuant to the definition of "insured" contained in the policy.

The policy also contained an MCS-90 endorsement in compliance with Federal law mandating that such an endorsement be included in any liability policy issued to a registered interstate motor carrier such as Blue Hen (*see,* 49 USC § 13906 [a] [1]; 49 CFR 387.15; *T.H.E. Ins. Co. v Larsen Intermodal Servs.,* 242 F3d 667). The endorsement provided, in pertinent part:

> "In consideration of the premium stated in the policy to which this endorsement is attached, the Company agrees to pay, within the limits of liability prescribed herein, any final judgment

recovered against the insured for bodily injury to or death of any person, or loss of or damages to property of others (excluding injury to or death of the insured's employees while engaged in the course of their employment, and property transported by the insured, designated as cargo), resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate or permit issued to the insured * * * in interstate or foreign commerce * * * regardless of whether or not such motor vehicles are specifically described in the policy * * * It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability or from the payment of any final judgment, irrespective of the financial responsibility or lack thereof or involvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, and the insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

"It is understood and agreed that, upon failure of the Company to pay any final judgment recovered against the insured as prescribed herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the Company to compel such payment."

In 1995, the plaintiff commenced an action to recover damages for personal injuries in the Supreme Court, Kings County, against Conquest and Harris. Judgment in the aggregate sum of $227,560 was entered against them upon their default in appearing, and after an inquest.

On August 1, 1997, the plaintiff served a copy of the judgment on Providence, which then disclaimed coverage on the ground that it was not provided with prompt notice of the loss.

Providence cited a policy provision requiring the "insured" to give prompt notice of the loss and to cooperate with any investigation, settlement, or defense of the claim.

Thereafter, the plaintiff commenced the instant action directly against Providence pursuant to Insurance Law § 3420. After issue was joined, Providence moved for summary judgment and the plaintiff cross-moved for summary judgment. The Supreme Court granted summary judgment to the plaintiff on the ground that Providence was "mandated by Federal law to pay plaintiff the full proceeds of the judgment."

On appeal, the defendant contends that the word "insured" in the MCS-90 endorsement refers solely to the named insured, Blue Hen. Therefore, "only a judgment against the motor carrier for which the endorsement was made triggers an insurer's obligation under that endorsement." However, 49 CFR 387.15, which sets forth the language of the MCS-90 endorsement and definitions applicable thereto, does not define the term "insured."

The statute from which the endorsement derives and the regulations promulgated thereunder were enacted "to stem the unregulated use of non-owned vehicles that threatened both public safety and the vitality of the trucking industry" (*Integral Ins. Co. v Fulbright Trucking,* 930 F2d 258, 261). A practice developed in the interstate trucking industry wherein a licensed interstate motor carrier would use nonowned equipment, leased from the owner and operated by an owner lessor not subject to the regulations applicable to licensed interstate carriers (*see, American Trucking Assns. v United States,* 344 US 298, 303-304). By so doing, the licensed interstate motor carrier attempted to avoid liability for the negligence of the operator of the equipment by claiming that the operator was an independent contractor (*see, Perry v Harco Natl. Ins. Co.,* 129 F3d 1072; *Prestige Cas. Co. v Michigan Mut. Ins. Co.,* 99 F3d 1340, 1342-1343). The purpose of the endorsement was to insure that if the injured member of the public is not adequately compensated, the licensed interstate motor carrier would provide sufficient compensation for the injuries incurred (*see,* 49 CFR 387.1, 387.3; *T.H.E. Ins. Co. v Larsen Intermodal Servs.,* 242 F3d 667, *supra; Canal Ins. Co. v First Gen. Ins. Co.,* 889 F2d 604, 610, *amended on other grounds* 901 F2d 45).

The obligation placed on the insurance carrier is one of suretyship: it "covers the public" and provides a safety net when other coverage is lacking (*Canal Ins. Co. v Carolina Cas. Ins. Co.,* 59 F3d 281, 283; *T.H.E. Ins. Co. v Larsen Intermodal*

*Servs., supra*). "Thus, the insurer's obligations under the MCS-90 are triggered when the policy to which it is attached provides no coverage to the insured" (*T.H.E. Ins. Co. v Larsen Intermodal Servs., supra,* at 672).

In the instant case, Providence disclaimed coverage under other provisions of the policy, triggering its obligations under the endorsement. Failure to comply with the requirement to notify the insurance carrier as soon as practicable of the loss constitutes the failure to satisfy a condition precedent to coverage (*see, White v City of New York,* 81 NY2d 955; *Travelers Indem. Co. v Worthy,* 281 AD2d 411). However, the endorsement specifically provides that "no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability." Thus, the effect of the endorsement is that it "deletes limiting clauses in the policy to which it is attached" (*Empire Fire & Mar. Ins. Co. v Guaranty Natl. Ins. Co.,* 868 F2d 357, 363). The endorsement "creates a duty running from the insurer to members of the public, regardless of any limitation in the insurance policy between the insurer and the insured" (*Green v Royal Indem. Co.,* 1994 WL 267749, *5, 1994 US Dist LEXIS 7948, *14 [SD NY, June 15, 1994]), and regardless of a failure to notify the carrier as soon as practicable (*see, Miller v Harco Natl. Ins. Co.,* 241 F3d 1331).

The United States Court of Appeals for the Second Circuit has noted that "[t]he plain meaning of the endorsement requires only (1) a final judgment against the insured which (2) arises out of the negligent operation, maintenance or use of the motor vehicle" (*Integral Ins. Co. v Fulbright Trucking, supra,* at 260-261). There is no requirement that the judgment be against a named insured (*see, Federal Ins. Co. v Commercial Union Ins. Co.,* 126 AD2d 892). Indeed, limiting liability under the endorsement to judgments against the "named insured," which in most cases would be the registered interstate motor carrier itself, would defeat the purpose of the endorsement: to provide coverage when the registered interstate motor carrier leases equipment and the accident results from the negligence of the lessor.

In any event, it is undisputed that Conquest and Harris fall within the policy definition of "insured." It is well settled that when an insurance policy provides broader coverage than required, the language of the policy controls (*see, Matter of Mostow v State Farm Ins. Cos.,* 88 NY2d 321; *Patilla v Gris-*

*som,* 1999 WL 743680, 1999 Del Super LEXIS 362 [Del Super, July 28, 1999]).

In a case where the named insured was not a registered interstate motor carrier, the United States Court of Appeals for the Ninth Circuit held that the endorsement did not provide coverage (*see, Del Real v United States Fire Ins. Crum & Forster,* 64 F Supp 2d 958, *affd* 188 F3d 512 [unpublished decision]). In that case, the plaintiffs' decedent was killed in an accident involving a tractor-trailer operated by Manke Trucking, which leased the trailer. The owner of the trailer was not an interstate motor carrier: its policy only included the MCS-90 endorsement because it was a subsidiary of a corporation which owned a "small number of vans" (*Del Real v United States Fire Ins. Crum & Forster, supra,* at 965 n 9) which were licensed to transport property interstate. The court held that the trailer was not a motor vehicle licensed to carry property in interstate commence. Therefore, by its terms, the MCS-90 endorsement did not apply. The court further held, in dicta, that "the term 'insured' refers only to the named insured" (*Del Real v United States Fire Ins. Crum & Forster, supra,* at 964).

Other cases have held that the endorsement expands the definition of "insured" to the permissive user of any motor vehicle owned, hired, or borrowed by the named insured, regardless of whether the motor vehicle is described in the policy (*see, Adams v Royal Indem. Co.,* 99 F3d 964; *John Deere Ins. Co. v Nueva,* 229 F3d 853). In *Adams v Royal Indem. Co. (supra),* the court noted that the endorsement "does not explicitly define 'insured' " (99 F3d 964, 970): the definition of "insured" was derived from the policy language and from the language of the endorsement itself. The court further found that the "endorsement precludes a policy from limiting the definition of an insured to one who owns, hires or borrows only specifically described motor vehicles because such a limited definition would subvert the purpose of the ICC endorsement of requiring coverage on all regulated vehicles" (99 F3d 964, 970). In that case, as in the instant case, the insurance carrier for the trailer was obligated to indemnify an injured plaintiff pursuant to a default judgment against the driver of the truck who was merely a permissive user of the trailer.

In support of his claim that the endorsement only applies to a "named insured," the defendant cites a number of cases involving disputes between insurance carriers. Since the purpose of the MCS-90 endorsement is to provide coverage when other coverage is lacking, its terms generally are not rel-

evant to disputes between insurance carriers (*see, Prestige Cas. Co. v Michigan Mut. Ins. Co.,* 99 F3d 1340; *Canal Ins. Co. v First Gen. Ins. Co.,* 889 F2d 604, 611, *supra*). If there is more than one insurance carrier available to compensate the injured member of the public, the majority view is that the MCS-90 endorsement does not make the lessee's insurance coverage primary to other insurance coverage (*see, Occidental Fire & Cas. Co. v International Ins. Co.,* 804 F2d 983, 986; *Carter v Vangilder,* 803 F2d 189, 192; *Travelers Ins. Co. v Transport Ins. Co.,* 787 F2d 1133; *American Interinsurance Exch. v Commercial Union Assur. Co.,* 605 F2d 731, *cert denied* 445 US 929; *Carolina Cas. Ins. Co. v Insurance Co.,* 595 F2d 128, 138; *Federal Ins. Co. v Commercial Union Ins. Co.,* 126 AD2d 892, *supra*; Annotation, *Effect of Motor Carrier Act Provisions on Insurance and Indemnity Agreements [49 U.S.C.A. §§ 13906, 14102] in Allocating Losses Involving Interstate Motor Carriers,* 157 ALR Fed 549).

Nor is the MCS-90 endorsement relevant to disputes between the insurance carrier and the insured. The insured's obligation to reimburse the insurance carrier, pursuant to the terms of the "MCS-90" endorsement, is governed by State law (*see, T.H.E. Ins. Co. v Larsen Intermodal Servs., supra; Canal Ins. Co. v First Gen. Ins. Co.,* 889 F2d 604, 608). Whether or not the defendant is entitled to reimbursement from Blue Hen is not in issue on this appeal.

Nor does the endorsement cover injuries to employees of the "insured" whether that insured is a named insured or another insured under the policy definition. Indeed, the language of the endorsement, by its terms, does not apply to "injury to or death of the insured's employees while engaged in the course of their employment" (*Transport Indem. Co. v Teter,* 575 SW2d 780, 785; *see, White v Excalibur Ins. Co.,* 599 F2d 50, 55; *Radman v Jones Motor Co.,* 914 F Supp 1193, 1199-1201).

The meaning of the terms of the endorsement may not be interpreted in a vacuum. The endorsement must be read in conjunction with other provisions of the policy. For example, if the terms of the policy limit the definition of insured to exclude the owner or driver of a leased truck not used exclusively in the business of the named insured, the endorsement does not extend coverage to such persons (*see, Wellman v Liberty Mut. Ins. Co.,* 496 F2d 131; *see also, Lumbermens Mut. Cas. Co. v Travelers Ins. Co.,* 45 AD2d 24). However, in the instant case, it is undisputed that Conquest and Harris were insureds under the terms of the policy.

Accordingly, the judgment appealed from is affirmed, and the plaintiff's cross appeal is dismissed, as the plaintiff's application for sanctions remains pending and undecided (*see, Katz v Katz,* 68 AD2d 536, 542-543).

FRIEDMANN, J. (dissenting in part and concurring in part).

In determining whether the plaintiff is entitled to summary judgment on his complaint in the instant case, this Court must determine whether the Federally-mandated MCS-90 endorsement contained in the policy which Providence issued to Blue Hen requires Providence to indemnify the plaintiff for a default judgment which he obtained against two individuals who fall within the policy definition of an "insured," but who are not "named insureds" of the policy, and where the plaintiff has not yet obtained a judgment against Blue Hen. Because I conclude that the MCS-90 endorsement does not require indemnification under such circumstances, I respectfully dissent insofar as this Court affirms the judgment in favor of the plaintiff, and would reverse the judgment, vacate the order, grant the motion of Providence for summary judgment, and deny the plaintiff's cross motion for summary judgment.

The underlying facts, which are essentially undisputed and accurately set forth in the majority opinion, need not be repeated.

As noted by the majority, because Blue Hen is a licensed interstate motor carrier, Federal law required that the commercial motor vehicle policy which Providence issued to Blue Hen contain what is commonly referred to as an "MCS-90 endorsement" (*see,* 49 USC § 13906 [a] [1]; 49 CFR 387.15). Pursuant to that endorsement, insofar as is relevant to the instant appeal, Providence "agree[d] to pay * * * any final judgment recovered against *the insured* for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980" (49 CFR 387.15 [emphasis added]). The primary issue to be resolved on Providence's appeal is whether the term "insured," as used in the MCS-90 endorsement, refers to anyone who falls within the policy definition of an insured, or refers to the "named insured," in this case Blue Hen. I agree with Providence that the term "insured" refers to the named insured interstate motor carrier, and that the plaintiff in this case was required to obtain a judgment against Blue Hen before Providence can be required to pay the judgment obtained by the plaintiff.

Under Federal law, a motor carrier may be registered as an interstate carrier only if that carrier, or "registrant," "files with the Secretary [of Transportation] a bond, insurance policy, or other type of security" in a minimum amount "sufficient to pay, not more than the amount of the security, for each final judgment against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles, or for loss or damage to property * * * or both" (49 USC § 13906 [a] [1] [emphasis added]). In connection with this requirement, the Code of Federal Regulations provides, *inter alia,* that "[n]o common or contract carrier * * * shall engage in interstate * * * commerce, and no certificate or permit shall be issued to such a carrier or remain in force unless and until there shall have been filed with and accepted by the Commission surety bonds, certificates of insurance * * * conditioned to pay any final judgment recovered *against such motor carrier* for bodily injuries to or death of any person resulting from the negligent operation, maintenance or use of motor vehicles in transportation subject to Subchapter II, Chapter 105, Subtitle IV of Title 49 of the United States Code" (49 CFR 387.301 [a] [1] [emphasis added]).

In order to comply with this requirement, a liability policy issued to an interstate carrier must contain an MCS-90 endorsement. Under this endorsement, the insurer "agrees to pay, within the limits of liability described herein, any final judgment recovered *against the insured* for public liability resulting from negligence in the operation, maintenance or use of motor vehicles" (49 CFR 387.15 [emphasis added]). Although, as noted by the majority, the term "insured" is not defined in 49 CFR 387.15, which provides the mandatory language of the MCS-90 endorsement, the term is defined elsewhere in the applicable Code of Federal Regulations. The terms "insured and principal" are defined as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier" (49 CFR 387.5). Applying this definition of "insured" to the MCS-90 endorsement, I conclude that a plaintiff injured in a collision with a licensed interstate carrier must obtain a judgment against that carrier before the MCS-90 endorsement requires the carrier's insurer to pay the judgment.

This very issue was addressed by Judge Levi in the District Court for the Eastern District of California in *Del Real v United States Fire Ins. Crum & Forster* (64 F Supp 2d 958, *affd* 188 F3d 512 [9th Cir 1999]). In that case, the plaintiffs' decedent

was killed in a multivehicle accident. The plaintiffs commenced an action in California state court against Manke Trucking and Gilbert Vidrios, the owner and operator, respectively, of the truck involved in the accident; Strick Leasing, the owner-lessor of the trailer pulled by Manke's truck; and Xtra Corp. (hereinafter Xtra), of which Strick Leasing was a subsidiary. The action against Strick and Xtra was dismissed with prejudice, and Manke and Vidrios stipulated to liability. Manke's insurer stipulated to pay the policy limits of $750,000, and the plaintiffs obtained a judgment in the amount of $2,059,539. Thereafter, the plaintiffs commenced the Federal action against United States Fire Insurance (hereinafter U.S. Fire), Xtra's insurer, to recover the unpaid portion of the judgment ($1.3 million). The policy issued by U.S. Fire to Xtra (hereinafter the U.S. Fire policy) contained an MCS-90 endorsement.

Insofar as is relevant to the instant appeal, the plaintiffs claimed that because Vidrios and Manke were permissive users, they were insureds under the U.S. Fire policy, and therefore, the MCS-90 endorsement extended coverage to the plaintiffs as judgment creditors of Vidrios and Manke, even though Manke and Vidrios were neither named insureds nor listed as additional insureds on the U.S. Fire policy. In rejecting this argument, Judge Levi stated:

> "Plaintiffs are not entitled to recover under the MCS-90 endorsement for two reasons. First, Manke and Vidrios are not 'insureds' under the MCS-90 endorsement. The endorsement obligates the insurer only to pay 'any final judgment recovered against the insured.' It is ambiguous whether the term 'insured' is limited to the named insured or also includes lessees and other permissive users. Because the exact language used in the endorsement is mandated by a federal regulation and not subject to modification by the parties, the definition of 'insured' found in the policy is not conclusive. See 49 C.F.R. § 387.15 (1994).

> "The language of the endorsement, the relevant federal regulations, and the intent of the parties all indicate that the term 'insured' refers only to the named insured * * * It is unlikely that the term 'insured' was intended to include lessees. Lessees are not parties to the insurance contract, and cannot be said to have knowingly entered into an

agreement to reimburse the insurance company for payments made on the MCS-90 endorsement. The named insured cannot reasonably be understood to have agreed to reimburse the insurance company for payments made to judgment creditors of lessees. The relevant federal regulations reinforce the conclusion that only the named insured is an 'insured' under the endorsement: 'insured and principal' are defined as 'the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier.' 49 C.F.R. § 387.5 (1994)." (*Del Real v United States Fire Ins. Crum & Forster,* 64 F Supp 2d 958, 964; *see also, T.H.E. Ins. Co. v Larsen Intermodal Servs.,* 242 F3d 667, 672, *supra* [5th Cir 2001] ["the policy embodied in the [former Interstate Commerce Commission] regulations 'was to assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers' "]; *Jackson v O'Shields,* 101 F3d 1083, 1085 [under the MCS-90 endorsement, the insurer "undertook to pay any final judgment rendered against (the interstate carrier)"]; *White v Excalibur Ins. Co.,* 599 F2d 50, 55 [5th Cir 1979] [MCS-90 endorsement did not obligate interstate carrier's insurer to pay judgment which plaintiff obtained against driver of rig leased by interstate carrier. The plaintiff was barred from recovering from the interstate carrier's insurer due to her failure to secure a judgment against the insured motor carrier. By the terms of 49 USC § 315, in order for the interstate carrier's insurer to be liable under the policy filed with the ICC the interstate carrier must first be adjudicated liable as a party].)

In sum, I agree with Judge Levi's reasoning.

It is important to note that such a result would not leave the plaintiff without a remedy. Rather, if and when he obtains a judgment against Blue Hen, it is clear that Providence would then have to pay such a judgment. Thus, in my opinion, the objectives of the statute from which the MCS-90 endorsement derives and the regulations promulgated by the Secretary of

Transportation would not be frustrated by requiring the plaintiff to obtain a judgment against Blue Hen.

I agree with my colleagues in the majority that the plaintiff's cross appeal must be dismissed, as his application for sanctions remains pending and undecided (*see, Katz v Katz,* 68 AD2d 536, *supra*).

ALTMAN, J. P., and COZIER, J., concur with GOLDSTEIN, J.; FRIEDMANN, J., dissents in part and concurs in part, and votes to reverse the judgment, vacate the order, grant Providence's motion for summary judgment, deny the plaintiff's cross motion for summary judgment, and dismiss the cross appeal from the order in a separate opinion.

Ordered that the judgment is affirmed; and it is further,

Ordered that the cross appeal is dismissed; and it is further,

Ordered that the plaintiff is awarded one bill of costs.