Wesley, J.
(dissenting). We respectfully dissent.
For 67 years, Congress has required an interstate motor carrier to provide proof of financial security as a precondition to registration. When the motor carrier satisfies this obligation by obtaining liability insurance coverage, Congress has imposed a limited federal exception (the MCS-90 endorsement) to the insurance contract — the insurer must pay, up to the limits of liability, any judgment obtained against the motor carrier, notwithstanding any coverage preconditions or limitations in the insurance contract.[1] Because this exception is a creation of federal law, one must look to the statute and regulatory scheme, not the insurance contract, to resolve this case.
On November 30, 1994, Steve Pierre was injured at the intersection of Eastern Parkway and St. John’s Place in Brooklyn when his 1980 Ford van was struck on the passenger side by a tractor trailer as it attempted to make a left turn *238 across Pierre’s lane of travel. The tractor was owned by Preston Conquest and was leased to Blue Hen (Blue Hen owned the trailer). The tractor was operated by Stevie Dwayne Harris, an employee of Conquest. Providence Washington Insurance Company issued a commercial motor vehicle liability policy to Blue Hen that covered the tractor and trailer. The policy contained a prompt notice of loss clause.
In June of 1995, Pierre commenced an action against Harris and Conquest.[2] The summons and complaint were served on the Secretary of State pursuant to section 253 of the Vehicle and Traffic Law. Not surprisingly, neither Conquest nor Harris appeared and Pierre took a default judgment against both with an assessment of damages and costs for $227,560 following an inquest.[3] In early October 1996 (well within the statute of limitations), Pierre commenced a second lawsuit. This time, Blue Hen was the only named defendant. Providence served a reservation of rights letter shortly thereafter while assigning counsel to represent Blue Hen. For reasons not reflected in the record, Pierre discontinued this action.[4]
While the Blue Hen action was pending, Pierre’s attorneys notified Providence of the default in the Harris/Conquest action and demanded payment on the judgment. Providence denied coverage based on the failure of Harris, Conquest or Blue Hen to provide timely notice of the accident as required by the policy. Two months later, plaintiff commenced this action. The complaint asserts that Conquest, Harris and Blue Hen are “insureds” under the policy and Providence must therefore pay the Harris and Conquest judgment pursuant to section 3420 of the Insurance Law.
Pierre and Providence cross-moved for summary judgment. Supreme Court granted Pierre’s motion without reaching the merits of Providence’s late notice defense. The court examined the MCS-90 endorsement in conjunction with the Providence policy. The court reasoned that the MCS-90 requires Providence to pay any judgment against “the insured” within the limits of liability without regard to any contract preconditions *239 (such as prompt notice). Since Harris and Conquest were each an insured under the policy, Providence was ordered to pay the judgment.
The Appellate Division affirmed with one Justice dissenting (see Pierre v Providence Washington Ins. Co., 286 AD2d 139 [2d Dept 2001]). The Court acknowledged that the MCS-90 is mandated by federal law. However, the Court asserted that federal regulations did not define “insured” and looked to the language of the policy to determine the meaning of that term as used in the MCS-90. “The endorsement [MCS-90] must be read in conjunction with other provisions of the policy” (id. at 145). Because Harris and Conquest were “other insureds” under the policy, the Court concluded that the provisions of the MCS-90 precluding denial of liability premised on a coverage limitation or exclusion were in play. The dissenter took the view that the clear legislative purpose of the statutorily mandated MCS-90 was to suspend limitations of coverage in commercial motor carrier policies only when a judgment is obtained against the named insured — the registered motor carrier. The dissenter adopted the reasoning of the Federal District Court in a similar case (see Del Real v United States Fire Ins. Crum & Forster, 64 F Supp 2d 958, affd 188 F3d 512 [9th Cir 1999]).
In our view, the language of the MCS-90 can only be understood in the statutory and regulatory context that created the form. The words employed are those of Congress and the Secretary of Transportation. They were not chosen by Providence; they were imposed by the federal government.
The Secretary of Transportation has regulatory authority over the transportation of goods or passengers by motor carriers in interstate commerce (see 49 USC § 13501). No person may operate as a motor carrier subject to that jurisdiction unless registered to do so (see 49 USC § 13901). Federal registration of a commercial motor carrier is conditioned upon the carrier’s filing with the Secretary of Transportation proof of insurance, a security bond or other security sufficient to pay, up to a prescribed limit “for each final judgment against the registrant for bodily injury” or property damage “resulting from the negligent operation, maintenance, or use of motor vehicles” (49 USC § 13906 [a] [1] [emphasis added]). The focus of the statute is repeated in its implementing regulations. “[N]o certificate or permit shall be issued to such a carrier * * * unless and until there shall have been filed with and accepted by the FMCSA [Federal Motor Carrier Safety Administration] *240 surety bonds, certificates of insurance, proof of qualifications as self-insurer, or other securities or agreements * * * conditioned to pay any final judgment recovered against such motor carrier” (49 CFR 387.301 [a] [1]) [emphasis added]).[5] In essence, the same language is carried over to the MCS-90; however, because that form is designed to be attached to an insurance policy, the form provides that the insurer will pay “any final judgment recovered against the insured” (49 CFR 387.15 [emphasis added]).
We find it very troubling that the majority view of the endorsement is broader than the enabling legislation. If indeed the regulatory language is broader than the statute that authorizes it, one would think that a court would interpret the regulation consistent with the statute, or limit its sweep to that permitted by Congress. Apparently the majority feels comfortable with this admitted excess. Our view of the language of the endorsement is limited to that authorized by Congress.
We agree with the majority that the endorsement is a creature of federal law. Thus, federal law governs how we must view the endorsement and its terms (see Clarendon Natl. Ins. Co. v Insurance Co. of W., 2000 US Dist LEXIS 13920, *13, 2000 WL 892864, *5 [ED Cal, June 30, 2000] [finding federal law governs the interpretation of the federally mandated MCS-90 provision]; see also Carter v Vangilder, 803 F2d 189, 191 [5th Cir 1986] [finding that federal law applies to the operation and effect of federally-mandated endorsements]). However, we would restrict our analysis to the traditional sources employed in examining the language of a document that is created by a regulation. Those regulations do provide a definition of “the insured” as used in MCS-90 (see 49 CFR 387.5). Under the regulation “insured” is defined as “the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation * * *” (id. [emphasis added]). In the context of the statutory and regulatory provisions the MCS-90 form is designed to implement, “the insured” can only sensibly be read to refer to the named insured to whom the underlying policy is issued — that is, the motor carrier that must obtain the policy in order to comply with federal statutory requirements.
*241 The phrase “the insured” appears numerous times in the form (see 49 CFR 387.15). Pursuant to settled federal rules of statutory construction, where the same word or phrase is used in different parts of a statute or act, the same meaning must attach to each (see Atlantic Cleaners & Dyers v United States, 286 US 427, 433 [1932]; see also United States v Kennedy, 233 F3d 157, 161 [2d Cir 2000]). Consequently, an examination of the endorsement illustrates that the phrase “the insured” means the named motor carrier, Blue Hen. For example, pursuant to the MCS-90, “[cancellation of this endorsement may be effected by the company or the insured” (49 CFR 387.15 [emphasis added]). To suggest that either Harris or Conquest could cancel Blue Hen’s policy makes no sense. Similarly, the MCS-90 is issued to “assure compliance by the insured” with federal responsibility requirements (id. [emphasis added]). Because neither Harris nor Conquest is a common carrier, neither is subject to federal motor carrier requirements and could not possibly be within the meaning of “the insured” for purposes of the endorsement.
Furthermore, “the ultimate criterion is the administrative interpretation [of the regulation], which becomes of controlling weight unless it is plainly erroneous or inconsistent * * *” (Bowles v Seminole Rock & Sand Co., 325 US 410, 414 [1945]; see Matter of Council of City of N.Y. v Public Serv. Commn. of State of N.Y., 99 NY2d 64, 74 [2002] [“ ‘(t)he interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that determination is not irrational or unreasonable'”’], quoting Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 548-549 [1997]). In conjunction with this appeal, Providence has submitted the Solicitor General’s amicus brief on a petition for a writ of certiorari to the United States Supreme Court in a case relied on by the majority, John Deere Ins. Co. v Nueva (229 F3d 853 [9th Cir 2000], cert denied 534 US 1127 [2002]). The amicus brief represents the official view of the Department of Transportation, the Federal Motor Carrier Safety Administration and the United States Department of Justice with regard to the MCS-90 and the responsibilities of an insurer of a registered motor carrier under the statute. In their view, the existing federal regulations only require a carrier’s insurer to satisfy a *242 judgment, regardless of the coverage terms of the policy, when the judgment includes the carrier.[6]
The Solicitor General notes that limiting the obligation assumed by the insurer under the federal financial responsibility rules to judgments that include the named insured is consistent with the logic and structure of the statute. MCS-90 requires Providence to accept liability beyond that which it would normally insure in a state-regulated transaction. The endorsement, however, also requires a corresponding concession by the insured motor carrier, Blue Hen, to reimburse the insurer for any payments the insurer makes on claims that are not covered by the underlying policy. Consequently, the increased risk imposed on the insurer is that the carrier will be unable to satisfy the reimbursement obligation. Because this risk can be easily assessed with regard to a prospective named insured — but not with respect to unknown third parties — it makes sense to limit the obligation assumed by the insurer to judgments that include the named insured.[7]
The statute and regulations protect the public in the event of an accident involving vehicles owned or operated by commercial motor carriers (see National Mut. Ins. Co. of D. C. v Liberty Mut. Ins. Co., 196 F2d 597 [DC Cir 1952], cert denied 344 US 819 [1952]). They guarantee that resources will be available to pay a final judgment obtained by an injured member of the public against a carrier for injury caused by negligent operation, maintenance or use of a carrier’s vehicle, even if the policy itself doés not provide coverage in the particular case, and even if the carrier is otherwise insolvent. In essence, the statute and regulations provide unencumbered coverage (coverage without preconditions or disclaimers) as long as the injured *243 party obtains a judgment against the carrier regardless of the legal theory.[8]
In addition to requiring carriers to obtain liability insurance, Congress and the Secretary of Transportation have imposed “control and responsibility” obligations on the carriers. A motor carrier subject to DOT jurisdiction is required to “have control of and be responsible for operating those [leased] motor vehicles” (49 USC § 14102 [a] [4]). To enforce this provision, the DOT regulations mandate that every lease entered into by a DOT-licensed carrier contain a provision that requires the interstate carrier/lessee to “assume complete responsibility for the operation of the equipment for the duration of the lease” (49 CFR 376.12 [c] [1]). We cannot discern how Pierre could not have prevailed in the Blue Hen action and obtained a judgment against Blue Hen premised on the lease. The federal financial responsibility provisions were designed to ensure the collectability of any such judgment — not to relieve the injured party from the obligation to obtain a final determination of legal liability.
Form MCS-90 is not intended and does not purport to vary any term of the underlying coverage. To the contrary, the form specifically preserves those terms as between the insurer and the named insured. The endorsement requires the insurer to pay certain judgments entered against the motor carrier, whether or not the events giving rise to the judgment come within the policy’s coverage, and subject to reimbursement by the carrier if they do not. It does not, however, modify the policy’s definition of an “insured.”
If an injured party obtains a judgment against the insured motor carrier, the endorsement requires the insurer to pay the judgment, without regard to coverage under the policy. Conversely, if the injured party obtains a judgment against a defendant other than the insured motor carrier, the insurer may or may not be required to pay that judgment under the policy — for instance, if Pierre can establish that timely notice of the accident was given to Providence, then consideration of *244 the endorsement is unnecessary.[9] The policy and the endorsement, while linked, impose different obligations based on different key determinants: an obligation to indemnify (i.e. pay without reimbursement) based on the policy’s coverage of a particular risk, or an obligation to make payment in the first instance, subject to possible reimbursement based on a final judgment entered against the motor carrier itself. The majority and the cases on which it relies conflate the two.[10]
Simply put, the MCS-90 is a separate federally mandated obligation that if a third party obtains a judgment against the motor carrier, the insurer cannot disclaim coverage based on any limitation of, or precondition to, coverage. The statute contains safeguards against a motor carrier erecting legal barriers against liability for the acts of others operating under the benefit of its interstate carrier registration. Indeed, Pierre does not contend he could not obtain a judgment against Blue Hen, nor has the majority here or at the Appellate Division made such a claim. The majority agrees with us that the statutory genesis of MCS-90 requires a motor carrier to obtain an insur *245 anee policy that will pay a final judgment against the registrant (majority op at 227). Somehow, this clear legislative language is abandoned to accomplish what the majority views as the purpose of the statute through a concededly broader interpretation of MCS-90.
The sum of the majority’s efforts is an odd result. Plaintiff contends he was injured when his vehicle was struck by a tractor trailer. He commenced an action for personal injuries against the nonresident driver and nonresident owner of the tractor by alternate service. Both default. Plaintiff then sues the named insured within the statute of limitations and although federal law supports his claim, he discontinues the action. Plaintiff then sues the insurer on the judgment. He now seeks to avoid the possibility that no one ever informed the carrier of the accident until after entry of the default judgment.
The policy concededly covers the driver and owner of the tractor. The insurer reserved its rights under the prompt notice provision of the policy and seeks a judicial determination on that claim. Under well-settled principles of New York law, we would give effect to the prompt notice provision in such a case if there were no issues of fact in that regard (see Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp., 31 NY2d 436 [1972]). Although the form that gives effect to the will of Congress was drafted by the Secretary of Transportation, the majority engages in a new form of statutory/regulatory construction by interpreting the language of the form not in the context of the statute that directed its creation or the regulation that gave it life, but by reference to a private insurance contract. Thus, the language of the form is not to be understood as an expression of the intent of Congress, but as another term of the policy. The risk for which the insurer issued the policy is redefined by a form the insurer did not draft.
The majority’s view of the MCS-90 eviscerates the policy and creates absolute liability against the insurer for anyone injured by a vehicle operating under the motor carrier’s registration who obtains a judgment against only the operator. It substitutes its view of good policy for the express provisions chosen by Congress. Had Congress intended such a result, it could have been easily accomplished. It could have required that the provisions of the MCS-90 apply to a judgment not just against “the insured,” but against “any insured” as defined in the liability policy (see Wellman, 496 F2d at 139).
We would therefore modify the order of the Appellate Division and remit the matter to Supreme Court for consideration *246 of the merits of defendant’s motion for summary judgment based on the late-notice provisions of the policy.
Chief Judge Kaye and Judges Ciparick and Rosenblatt concur with Judge Graffeo; Judge Wesley dissents and votes to modify in a separate opinion in which Judges Smith and Levine concur.
Order affirmed, etc.

. An MCS-90 endorsement is often referred to as an ICC endorsement because its form was initially prescribed under statutes delegating some of the enforcement of their provisions to the Interstate Commerce Commission. The BMC-90, the original ICC endorsement, was the predecessor to the MCS-90 and was in all material respects identical to the MCS-90. Congress abolished the ICC in 1995 (see Pub L 104-88, 109 US Stat 803) and provided that “[a] 11 * * * regulations * * * issued” by the ICC in performing functions transferred to the Secretary of Transportation “shall continue in effect according to their terms until modified, terminated, superseded, set aside or revoked in accordance with law” (ICC Termination Act of 1995, Pub L 104-88 § 204 [a], 109 US Stat 941). The Motor Carrier Safety Improvement Act of 1999 (Pub L 106-159, 113 US Stat 1748) created the Federal Motor Carrier Safety Administration (FMCSA) within the Department of Transportation (DOT), and charged it with carrying out “duties and powers related to motor carriers or motor carrier safety vested in the Secretary” by various provisions of US Code title 49 (Pub L 106-159 § 101 [a], adding 49 USC § 113 [fl [1], 113 US Stat 1750).

. Although Pierre claimed the tractor trailer struck his vehicle, he did not sue for property damage.

. Pierre asserts that he sustained a herniated disk and several bulging disks. He was not transported to the hospital for the accident. The record contains no medical reports documenting his injuries.

. Plaintiffs counsel notes in his brief that the action was discontinued. We agree with the majority that the basis for the discontinuance is not apparent in the record.

. The Secretary’s regulations set a minimum coverage requirement at $750,000 (49 CFR 387.7 [a]).

. The majority is content to ignore the views of the Secretary of Transportation and finds comfort in that it adopts the insurance contract based analysis of the Ninth and Tenth Circuits. We on the other hand think the view of the Secretary of Transportation — who created the form — does deserve deference (see Chevron U.S.A., Inc. v Natural Resources Defense Council, Inc., 467 US 837 [1984]).

. The majority concludes that because Harris and Conquest were “other insureds” under the policy, they were not “unknown third parties” to Providence (majority op at 230 n 6). We disagree. There is nothing in this record that would imply that Providence knew or would know of all of Blue Hen’s lease arrangements or the financial status of those entities. Certainly, Harris and Conquest were not specifically identified by the policy as named insureds.

. The majority’s view would create a curious anomaly. A motor carrier can satisfy the financial security requirements of the statute by filing a bond (MCS-82). However, the bond mandates payment only upon a judgment against the motor carrier (see J.B. Hunt Transp., Inc. v USF Distrib. Servs., Inc., 2002 WL 31045152, 2002 US Dist LEXIS 17166 [ED Pa, Sept. 10, 2002]). Thus, an injured third party would obtain two different results depending upon the method of statutory compliance chosen by the motor carrier. There is no basis in law or logic for such a distinction.

. In opposing Providence’s summary judgment motion, Pierre submitted an affidavit from Harris in which Harris asserts that he notified Blue Hen of the accident. Had Pierre obtained a judgment against Blue Hen, the late notice issue would be academic and the judgment long since paid.

. Although the majority eschews the Solicitor General’s position in favor of those expressed by federal appellate courts (majority op at 231-234, 234-235 n 10), the majority fails to consider decisions of the federal courts over the last 50 years, all of which take the view that liability of an insurer under MCS-90 would only be triggered by a judgment against the registered motor carrier (see National Mut. Ins. Co., 196 F2d at 599 [the court, after examining language of the BMC-90 endorsement, the predecessor to the MCS-90, found that an insurer is required to make payment under the endorsement only upon entry of a judgment that included the insured motor carrier]; Wellman v Liberty Mut. Ins. Co., 496 F2d 131, 139 [8th Cir 1974] [finding the financial responsibility provisions only allow recovery when the injured party takes the intermediate step of obtaining judgment against the carrier]; White v Excalibur Ins. Co., 599 F2d 50, 55 [5th Cir 1979], cert denied 444 US 965 [1979] [finding under 49 USC § 315, the predecessor to the current 49 USC § 13906, that “in order for (the insurer) to be liable under the policy filed by (the carrier) with the ICC, (the carrier) must first be adjudicated liable as a party”]; Carolina Cas. Ins. Co. v Insurance Co. of N. Am., 595 F2d 128, 139 [3d Cir 1979] [finding the governing statute and regulation do not require a motor carrier to “defend claims * * * or to pay judgments entered against others” but “require only that the carrier give security ‘to Pay any final judgment recovered Against such motor carrier * * *’; they mention * * * nothing about payment of judgments recovered against other parties”]; Del Real v United States Fire Ins. Crum & Forster, 64 F Supp 2d 958, 964 [ED Cal 1998], affd 188 F3d 512 [1999] [finding “(t)he language of the endorsement, the relevant federal regulations * * * indicate that the term ‘insured’ refers only to the named insured”]).