**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 10/28/96**

**TENTH CIRCUIT**

CHARLES P. ADAMS,

      Plaintiff-Appellant,

v.

ROYAL INDEMNITY COMPANY,

      Defendant-Appellee.

No. 95-4091

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 93-CV-575)**

Milo Steven Marsden, of Giauque, Crockett, Bendinger & Peterson, Salt Lake City, UT, for Plaintiff-Appellant Charles P. Adams.

Robert C. Keller, of Snow, Christensen & Martineau, Salt Lake City, UT, for Defendant-Appellee Royal Indemnity Company.

Before **EBEL, KELLY** and **HENRY**, Circuit Judges.

**EBEL**, Circuit Judge.

    Appellant Charles Adams was seriously injured in an accident involving a tractor-trailer driven by John Hofer. Following the accident, Adams obtained a default judgment against Hofer of approximately $1 million in Utah state court, but was

unsuccessful in collecting the judgment from Hofer. Adams then brought this action against Appellee Royal Indemnity Co., which had issued two insurance policies pertinent to this action. First, Royal insured Melvin Geigley. At the time of the accident, Geigley was lessee of the trailer involved in the accident, trailer 701, and Geigley had, in turn, lent that trailer to Hofer. Second, Royal insured Raymond Thomas, who was a partner in the partnership that owned trailer 701 and had leased it to Geigley. The district court granted summary judgment in favor of Royal, concluding that: (1) neither policy insured Hofer because Hofer was not using a "covered auto" at the time of the accident; and (2) the ICC endorsement applicable to both policies did not extend coverage to this situation because Hofer could not be considered an "insured" under either policy. Adams now appeals.

We affirm the district court's conclusion that trailer 701 was not a covered auto under either the Geigley or Thomas policy and, therefore, agree that the basic policies do not insure against the damage here. However, we conclude that the effect of the ICC endorsement modifies the definition of an insured so that Royal is liable to Adams on the Geigley policy. However, the endorsement does not change our conclusion that the Thomas policy provides no coverage. Thus, we reverse the district court's ruling as to the Geigley policy and affirm its ruling as to the Thomas policy, and we remand for further proceedings on the Geigley policy.

**Background**

On January 17, 1986, a load of steel trusses fell from a tractor-trailer rig driven by Hofer near Salt Lake City, causing an accident that severely injured Adams. At the time of the accident, Hofer was using a tractor owned by his brother and he was pulling trailer 701. There is no claim that the tractor was covered under any policy against which claims are being made in this litigation. Hofer had borrowed trailer 701 from his father-in-law, Melvin Geigley, and he was using trailer 701 with Geigley's permission at the time of the accident. Geigley, however, did not own trailer 701. Rather, Geigley was leasing it from its owner, Daniel A. Ring and Associates, Inc., dba Cactus Country Distributing (Cactus Country), of which Thomas was a partner. Following the accident, Adams sued Hofer in state court and obtained a default judgment of approximately $1 million when Hofer failed to appear to defend. The state court concluded that Hofer was "negligent and careless at the time of the accident in question" and that Hofer's "negligence and carelessness was the sole proximate cause of the accident and resulting injuries to plaintiff Adams."

Prior to the accident, Royal had issued an insurance policy to "Melvin C. Geigley, dba H&M Trucking," which was in effect from September 3, 1985 to September 3, 1986. In January of 1985, Royal also issued a policy to "Raymond D. Thomas dba Cactus Country Distributing" effective from January 14, 1985 to January 14, 1986, which was thereafter renewed to extend coverage through January 14, 1987. Both the Geigley and

the Thomas policy indicated that the form of the insureds' business was "individual," as opposed to a partnership, corporation or other form of business.

Both policies defined "WHO IS INSURED" at Part IV of the policies as follows:

1.      You are an insured for any <u>covered auto</u>.

2.      Anyone else is an insured while using with your permission a <u>covered auto</u> you own, hire or borrow....  [the "Omnibus Clause"]

(Emphasis added.)  Thus, it becomes important to determine what is a "covered auto." The fact that the insurance nexus here is asserted through a trailer (trailer #701) rather than the tractor portion of the rig is no obstacle to Adams' claim because both policies define "auto" to include a "trailer" or "semitrailer."

Item Four of each policy provides a schedule where "Covered Autos You Own" were to be listed.  These particular policies provided coverage relevant to this action on autos owned by the insured only if those autos are described in Item Four for which a premium is shown.[1]   Both policies have several trailers explicitly listed in Item Four.

_____

[1]  Specifically, Part II of these policies, which defines "covered autos," provides:

PART II -- WHICH AUTOS ARE COVERED AUTOS

a.  ITEM TWO of the declarations shows the autos that are covered autos for each of your coverages.  The numerical symbols explained in ITEM THREE of the declarations describe which autos are covered autos.  The symbols entered next to a coverage designate the only autos that are covered autos.

Item Two of both policies listed the insureds' liability coverage as "46."  Item Three of
(continued...)

The particular trailer involved in this accident, VIN FM076701 ("701") was not explicitly listed on either policy; however, on the Geigley policy there is handwritten in Item Four the phrase "5) Any trailer," and on the Thomas policy there is typed in Item Four the phrase "any undescribed trailer while singularly attached."

In addition, both the Geigley policy and the Thomas policy included an ICC mandated Form MCS-90 endorsement ("ICC endorsement"). 49 C.F.R. §§ 387.3(a) and 387.15. That endorsement was required to ensure that all ICC-certified carriers maintain certain minimum coverage to protect the public in the event of accident or injury. The ICC endorsement modified the underlying insurance policy in a potentially critical manner. That endorsement reads,

> [T]he <u>insurer</u> . . . agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of

---

[1](...continued)
the policies defined symbol "46" coverage as follows:

> 46 = SPECIFICALLY DESCRIBED AUTOS. Only those autos described in ITEM FOUR for which a premium charge is shown and for liability coverage any trailers you don't own while attached to any power unit described in ITEM FOUR. [This last clause pertaining to trailers attached to a power unit described in ITEM FOUR is not relevant to this litigation because the tractor involved in this accident was not covered under either policy.]

- 5 -

the Motor Carrier Act of 1980 <u>regardless of whether or not each motor vehicle is specifically described in the policy</u> and

whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

(emphasis added.)[2]

Adams brought this action against Royal in federal district court to recover the judgment against Hofer under the Geigley and Thomas policies. The court granted Royal's motion for summary judgment, concluding that: (1) The policies did not insure Hofer under their Omnibus Clauses because Trailer 701 was not a "covered auto" under either policy; and (2) The ICC endorsement did not obligate Royal to pay Adams the judgment against Hofer because Hofer could not be considered an "insured" under either policy. Adams now appeals, arguing that he presented enough facts to withstand summary judgment against him, and that summary judgment should be granted in his favor. This appeal requires us to answer (1) what is a "covered auto" for purposes of liability under the basic policies and (2) who is an "insured" under the ICC endorsement.

**Whether the basic policies extend coverage to trailer 701.**

Adams argues that Royal must pay Adams the state court judgment against Hofer under the basic policies because the Omnibus Clause in both the Geigley and Thomas

---

[2] Motor vehicle is defined in the ICC endorsement to include trailers and semitrailers.

- 6 -

policies provide coverage to anyone "using with your permission a covered auto you own, hire or borrow." Adams presented evidence that Hofer was using trailer 701 with Geigley's permission at the time of the accident. He then argues that trailer 701 should be considered a "covered auto" even though it was not explicitly listed in Item Four, where all Covered Autos You Own are required to be listed, because it should be deemed included in the more generalized handwritten or typed notations that were added to Item Four in the Geigley and Thomas policies referencing "any trailer" or "any undescribed trailer," respectively.

Even assuming that Item Four included "any trailer" and "any undescribed trailer," respectively, at the time of the accident,[3] trailer 701 cannot be a "covered auto" under either policy. Item Four applies only to "COVERED AUTOS YOU OWN" (emphasis added). As noted in footnote 1, the coverage of these particular policies was designated as "symbol 46" coverage, which covers only described owned vehicles (or trailers attached to a covered power unit). Other symbols available to designate insurance for

---

[3] The parties dispute when the "any undescribed trailer" language was added to the Thomas policy. Because we conclude that Thomas did not own trailer 701, we need not decide when this language was added because even if it was present at the time of the accident, it would not have applied to trailer 701. At the same time, we grant Adams' motion to strike Royal's supplemental appendix, which attempts to show that the "any undescribed trailer" language was added following the accident, on the grounds that Royal did not present this evidence to the district court. See John Hancock Mut. Life Ins. Co. v. Weisman, 27 F.3d 500, 506 (10th Cir. 1994).

rented or borrowed autos were not used.[4]  Neither Geigley nor Thomas owned trailer 701.

Regarding the Geigley policy, it is undisputed that Geigley merely rented trailer 701.  A

separate provision of both policies, Item Five, applied to "HIRED OR BORROWED

COVERED AUTO[s]," and that item was blank on both policies.  Regarding the Thomas

policy, Adams argues that trailer 701 was owned by Cactus Country Distributing, a

partnership consisting of Thomas and two associates.[5]  However, the Thomas policy was

an "individual" policy, and not a partnership policy and it did not insure the partnership

business of Cactus Country Distributing.  Item Four of the Thomas policy therefore did

not reach any autos (such as 701) owned by Cactus Country Distributing, of which

Thomas was only a partner.[6]

---

[4]  As was pointed out earlier in this opinion, a "symbol 46" policy actually includes one category of non-owned autos.  It covers "trailers you don't own while attached to any power unit described in ITEM FOUR."  However, it is undisputed that trailer 701 was not attached to a power unit covered either by the Geigley or Thomas policy at the time of the accident, but rather was attached to a power unit owned by Hofer's brother.  Therefore, there was no argument of coverage under that provision.

[5]  The records of the Arizona Department of Transportation reflect that Daniel A. Ring and Associates, Inc. dba Cactus Country Distributing was the original purchaser of trailer 701.

[6] Utah law provides that a partner's right in specific partnership property is neither assignable, nor subject to attachment or execution.  Utah Code Ann. § 48-1-22(2)(b)(c) (1994).  Similarly, individual partners have no right to possess partnership property except for partnership purposes without the consent of the partners.  Utah Code Ann. § 48-1-22(2)(a).  Here there is nothing in the record to establish that Thomas leased trailer 701 to Geigley in his individual capacity; rather the lease was between Cactus Country Distributing and Geigley.

Therefore, neither the Geigley policy nor the Thomas policy by itself insured trailer 701 at the time of the accident.

**Whether the ICC endorsement extended coverage to trailer 701.**

Both the Geigley policy and the Thomas policy included an ICC Form MCS-90 endorsement, as required at the time by 49 U.S.C. § 10927, and so we are required to analyze whether that endorsement expanded coverage in such a manner as to support a claim under either the Geigley or Thomas policies. The ICC endorsement stated, in pertinent part:

> [T]he insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the <u>insured</u> for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 <u>regardless of whether or not each motor vehicle is specifically described in the policy</u> and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment within the limits of liability herein described . . . . However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

See 49 C.F.R. § 387.15 (emphasis added).

In Empire Fire and Marine Ins. v. Guaranty Nat'l. Ins., 868 F.2d 357 (10th Cir. 1989), we explained that the policy behind this ICC endorsement was to protect the public from uninsured regulated vehicles. We stated:

> [T]he ICC requires that all ICC-certified carriers maintain insurance or other form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles" under the carrier's permit. 49 C.F.R. § 1043.1(a).

Id. at 362. This ICC endorsement is designed to require ICC-certified carriers to insure against public liability for all their motor vehicles that are subject to the financial responsibility requirements of the Motor Carrier Act. By requiring all such described insurance policies to contain this ICC endorsement, the ICC prevents the possibility that, through inadvertence or otherwise, some vehicles may be left off a policy to the detriment of the public. See Empire Fire and Marine Ins., id. at 362 (discussing the policy concerns behind this ICC endorsement that the public be protected from uninsured vehicles that are subject to the financial responsibility requirements of the Motor Carrier Act). See also Canal Ins. Co. v. First General Ins. Co., 889 F.2d 604, 611 (5th Cir. 1989) (noting that "policy embodied in the statutes and regulations was to assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers."), *mandate recalled and reformed*, 901 F.2d 45 (5th Cir. 1990) ; Travelers Ins. Co. v. Transport Ins. Co., 787 F.2d 1133, 1140 (7th Cir. 1986) (noting that the purpose of

the ICC regulations "is to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations.").

However, the ICC endorsement is not intended to preclude insurers and carriers or multiple insurers from contractually apportioning ultimate liability among themselves as they wish. See also Transamerican Freight v. Brada Miller, 423 U.S. 28, 39-41 (1975) (upholding indemnity clause indemnifying lessee when the indemnification clause did not affect the lessee's responsibility to the public and involved only the relationship between the insureds and their insurers). In fact, the ICC endorsement specifically provides that "[t]he insured agrees to reimburse the company [the insurer] for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." See 49 C.F.R. § 387.15. This clause in the ICC endorsement balances the endorsement's policy of protecting the public from uninsured vehicles utilized by interstate carriers with the policy of permitting insurance companies to bargain with their insureds regarding how to allocate such coverage among themselves:

> [P]arties may enter into contractual agreements allocating ultimate liability among themselves that will be enforced so long as such agreements do not adversely

affect the rights of the public and shippers. . . .[7] By relying on the ICC endorsement to delete limiting language in the lessee's underlying policy, the public and shippers are protected. Having determined that the public and shippers are protected, the parties are then free, as among themselves, to allocate risk however they choose. Our task is simply to look at the insurance policies, as modified by relevant endorsements, and to make a determination under contract law as to how the parties have, in fact, chosen to allocate the risk.

Empire Fire, 868 F.2d at 366. In Travelers, the court similarly noted:

The purpose of the federal statute and regulations is to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations. However, once it is clear that there are sufficient funds available to safeguard the public, the inquiry changes: the pertinent question is whether the federal policy of assuring compensation for loss to the public prevents courts from examining the manner in which private agreements or state laws would otherwise allocate the ultimate financial burden of the injury. We agree with the majority view that I.C.C. public policy factors are frequently determinative where protection of a member of the public is at stake, but those factors cannot be invoked by another insurance company which contracted to insure a specific risk and which needs no equivalent protection.

787 F.2d at 1140 (quotations omitted) (emphasis in original).

The question before us therefore is whether Hofer can be considered an "insured" under either policy after the policy is modified by the endorsement, thereby triggering an obligation for Royal to satisfy Adams' judgment against Hofer. In conducting this inquiry, we must clearly keep in mind that Adams was, and is, a member of the general public, which is precisely the group that is intended to be protected by this ICC endorsement.

---

[7] 49 C.F.R. § 1057.2(k) defines a "shipper" as a "person who sends or receives property which is transported in interstate or foreign commerce."

Here, the district court concluded that because the endorsement does not define "insured," the court must look to the basic policy to determine the definition of an insured. It will be recalled that the policies defined the "insured" as someone using a "covered auto," and Hofer was not using a "covered auto" at the time of the accident. Thus, since Hofer was not an "insured" under the basic policy and the ICC endorsement did not explicitly redefine "insured," the district court concluded that even with the endorsement Hofer would not be an insured and Royal would have no liability. See Campbell v. Bartlett, 975 F.2d 1569, 1581 (10th Cir. 1992) (noting that the "endorsement itself does not define the term 'insured,' [and] that is still a matter governed by the express provisions of the body of the contract" (quotation omitted)).

Although we agree with the district court that the ICC endorsement does not explicitly define "insured," it indirectly modifies "insured" as defined in the basic policies by providing that the insurer must pay any final judgment against the insured for public liability resulting from operation of a regulated motor vehicle "regardless of whether or not each motor vehicle is specifically described in the policy." That is, this endorsement precludes a policy from limiting the definition of an insured to one who owns, hires or borrows only specifically described motor vehicles because such a limited definition would subvert the purpose of the ICC endorsement of requiring coverage on all regulated vehicles regardless of whether or not they are listed in the policy specifically. A policy with this ICC endorsement cannot explicitly limit liability to those vehicles specifically

described therein, nor can it indirectly so limit coverage by attempting to define who is insured in terms of specifically described vehicles.

Yet, that is what Royal's policy attempts to do. It defines an insured (other than the listed insured) as one who owns, hires or borrows a "covered auto." "Covered auto," in turn, is defined as "[o]nly those autos described in ITEM FOUR." Thus, according to the language of the policy (before considering the endorsement), there is a category of insureds whose liability is limited to, and conditioned upon, a regulated vehicle being specifically described in the policy. However, it is precisely such a limitation or condition that the ICC endorsement explicitly abrogates. See Canal Ins., 889 F.2d at 610-11 (agreeing that the effect of the ICC endorsement is to obligate insurers "to pay third-party judgments rendered against [the insured] regardless of whether the vehicles involved were covered under the policy"); Green v. Royal Indem. Co., No. 93 Civ. 4335 (MBM), 1994 WL 267749, at *4-5 (S.D. N.Y. June 15, 1994). ("It does not matter, therefore, that the insurance policy issued by Royal covers only those vehicles scheduled on the policy . . . because the broad language of the endorsement negates the effect of the narrow language in the policy."[8])

---

[8] The deleted portion of this quotation reads as follows, "or that are `lease[d], hire[d], rent[ed], or borrow[ed]' by Transport." As we indicate hereinafter, we do not agree with that particular conclusion of the district court for the Southern District of New York, and accordingly we quote above only the portion with which we do agree.

Royal attempts to rely on our statement in <u>Campbell v. Bartlett</u>, 975 F.2d at 1581 that "[t]he endorsement itself does not define the term `insured,' but we are satisfied `that is still a matter governed by the express provisions of the body of the contract.'" However, that reliance is misplaced. <u>Campbell</u>, of course, followed our decision in <u>Empire Fire</u> which explicitly held that the effect of the endorsement "negates any clauses in the body of the policy to which it is attached that would have the effect of limiting that insurance carrier's liability." <u>Empire Fire</u>, 868 F.2d at 363. <u>Campbell</u> does not, nor could it as a panel decision, disagree with that holding of <u>Empire</u>. <u>Campbell</u> did not have before it any issue concerning whether the <u>definition</u> of the insured might in the basic policy be impermissibly limited by a condition prohibited by the ICC endorsement clause, such as the prohibition against limiting coverage to listed vehicles. Rather, <u>Campbell</u> simply held that the employee of a listed insured was himself an insured, and it invalidated, under the ICC endorsement, a limiting clause that the insurance company had invoked to deny coverage because the employee had absconded and had, therefore, failed to cooperate with the insurance carrier in defense of the action. We have no quarrel whatsoever with the holding of <u>Campbell</u> but it simply does not avail Royal here .[9]  Here,

---

[9]  The district court cited <u>Empire Indem. Ins. Co. v. Carolina Cas. Ins. Co.</u>, 838 F.2d 1428 (5th Cir. 1988), for the proposition that the ICC endorsement does not modify a policy which defines the insured as a person driving a covered vehicle when the insured is not driving a covered vehicle. We believe the district court took this comment out of context. <u>Carolina</u> did not involve a situation where, as in the present case, a member of the public sought to invoke the ICC endorsement in order to collect a judgment from an

(continued...)

- 15 -

the ICC endorsement must be read to eliminate the limiting clause that coverage applies only to covered autos described in Item Four.  Thus, the definition of insured in the policy, as so modified, would effectively read:  "Anyone else is an insured while using with your permission an auto you own, hire or borrow..." Cf. Campbell, 975 F.2d at 1581 (negating cooperation clause in insurance policy).  It is undisputed that Hofer was using trailer 701 with Geigley's permission at the time of the accident and that the trailer was, at that time, a regulated vehicle that Geigley had hired or borrowed.  Thus, Hofer was an "insured" under the endorsement's modification to the Geigley policy, and Royal is liable to Adams for the judgment obtained against Hofer under the Geigley policy..

The insurance policy insuring Thomas is a different matter.  At the time of the accident, trailer 701 was neither owned, hired or borrowed by Thomas.  For these

---

[9](...continued)
insurer.  Instead, Carolina involved a dispute among several insurers regarding who ultimately was liable to pay a judgment.  The endorsement provides that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in force and effect as binding between the insured and the company."  (emphasis added).  Since Empire, in that case, did not have a contractual obligation to the tortfeasor to provide insurance, even though the endorsement may have imposed a liability on Empire to the public victim of the accident, there was no basis to require Empire to share the ultimate liability among the several insurers who had agreed to insure for this accident.  The court did not hold, as the district court suggested, that a member of the public seeking to invoke the endorsement would be unable to do so merely because the tortfeasor was not driving a covered auto.  The Fifth Circuit, after Carolina, recognized this distinction as well.  See Industrial Indemnity Co. v. Truax Truck Line, Inc., 45 F.3d 986, 991 (5th Cir. 1995) (noting that where "a policy does not provide coverage for nonlisted vehicles except to third-party members of the public through operation of ICC form endorsement [MCS 90], the policy provides no coverage for purposes of disputes among insurers over ultimate liability") (emphasis added) (citing Canal Ins. Co., 889 F.2d at 611)).

- 16 -

purposes, Thomas personally was a stranger to trailer 701. A policy insuring Thomas could no more legitimately be construed to cover trailer 701 than it could be construed to cover any other ICC-certified vehicle owned by a separate entity in whom Thomas happens to have an investment interest.[10] Nor was Hofer authorized in any way by Thomas individually to possess or use trailer 701 at the time of the accident, and so it cannot be said that Hofer was using trailer 701 "with [Thomas'] permission" in a way that could invoke the Thomas insurance policy for Hofer's tort. Thomas was not in the chain of title or possession of trailer 701 and there is no reason in fact or law why the ICC endorsement should be construed to require him to carry insurance on this vehicle. But see Green, 1994 WL 267749 at *4 (reading this ICC Endorsement to nullify the "lease, hire, rent, or borrow" limiting definition of an insured in the basic insurance policy).

We consider our interpretation to be consistent with the purpose of the endorsement. By deleting the policy requirement that an insured is defined in terms of described autos, the insurer assumes the role mandated by Congress and the ICC of protecting the public from interstate truckers who either themselves utilize, or give permission to others to utilize, uninsured vehicles which they own, hire, or borrow, but which are not listed in their insurance policies. This ICC endorsement is mandatory and any insurer who wishes to insure entities for public liability resulting from the operation,

---

[10] In the first part of this opinion, we concluded that there is no basis in the underlying policy for making Thomas personally liable for trailer 701 merely because it was owned by a partnership in which he was a partner.

- 17 -

maintenance, or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 must do so knowing that there are government mandates restricting their ability to limit coverage, and they can presumably set their premiums accordingly. However, once the public has been protected, the insurance company is not without remedies over against the insured trucker. The ICC endorsement goes on to provide,

> However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company [insurer]. The insured agrees to reimburse the company [insurer] . . . for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(emphasis added). In situations where the policy absent the endorsement did not insure the vehicle which caused the injuries, the endorsement explicitly requires that the insured reimburse the insurer because the insurer's payment to the injured motorist is a "payment the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." See 49 C.F.R. § 387.15. Thus, the public is protected by insurance and ultimate responsibility rests on the truckers, all as mandated by Congress and the ICC.

**Conclusion**

For the reasons stated above, we AFFIRM the district court's ruling that Royal has no liability to Adams on the Thomas policy. However, we REVERSE the district court's

ruling that Royal is not liable to Adams under the Geigley policy as modified by the ICC endorsement, and we REMAND for further proceedings on that claim.