[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 441.]

LYNCH, ADMR., ET AL., APPELLANTS, v. YOB ET AL., APPELLEES.

[Cite as *Lynch v. Yob*, 2002-Ohio-2485.]

*Insurance—Motor vehicle accident—Scope of tractor-trailer insurance coverage— Coverage is available on trailer under a federally mandated MCS-90 endorsement to insurance policy even though operator of the rig was not an insured under the terms of the trailer's main policy and even though there was no claim that the trailer owner was negligent.*

(Nos. 2001-0120 and 2001-0121—Submitted January 9, 2002—Decided June 12, 2002.)

APPEALS from the Court of Appeals for Trumbull County, Nos. 99-T-0062 and 99-T-0065.

_____

**ALICE ROBIE RESNICK, J.**

{¶1} These appeals concern the scope of insurance coverage relating to a traffic accident, in which two automobile occupants died, that was caused by the admitted negligence of the operator of a tractor-trailer rig. At this point, questions pertaining to the coverage on the tractor involved in the accident have been resolved. At issue is whether the policy of insurance covering the leased trailer involved in the accident is a potential source of recovery for the personal representatives of the accident victims and for their estates. The specific issue for consideration is whether coverage is available on the trailer under a federally mandated endorsement to the insurance policy, called an MCS-90 endorsement, even though the operator of the rig was not an insured under the terms of the trailer's main policy, and even though there is no claim that the trailer owner was negligent.

{¶2} To resolve this issue, we adopt the reasoning of recent decisions of two federal circuit courts of appeals and determine that coverage is available under

the trailer policy's MCS-90 endorsement in this situation. We reverse the judgments of the court of appeals below and reinstate the judgment of the trial court.

I

Facts and Procedural History

{¶3} On October 11, 1996, an accident involving a tractor-trailer and an automobile occurred on the Ohio Turnpike. The driver of the automobile, Justin L. Reese, and his passenger, Stephen M. Wiley, were killed in the accident. The tractor-trailer was driven by defendant-appellee Lawrence P. Yob, an employee of the tractor's owner, defendant-appellee Bath Transport, Inc. ("Bath"), which is owned by defendant-appellee Express Companies of America, Ltd. Yob's negligence in causing the accident is not disputed. The tractor was insured by defendants-appellees American International Group, Inc. and National Union Fire Insurance Company of Pittsburgh (collectively "AIG"), with a policy limit of $1 million. It has now been established that this policy provides coverage for the accident and that the policy will indemnify Yob and Bath for any judgment against them up to the policy limit. It has further been established that the tractor's policy had a federally mandated MCS-90 endorsement with a coverage limit of $1 million, which does not provide additional coverage beyond the $1 million provided by the tractor's liability policy.

{¶4} The parties agree that the trailer, owned by appellee GLS Leasco of Michigan, Inc., or by appellees Central Transport, Inc., and Central Cartage Company, was insured by AIG with a policy limit of $2.5 million.[1] The parties further agree that Bath and Yob are not included within the definition of "insureds" under this policy (because the policy specifically states that any "trucker" who is not an employee of the named insured is not an insured under its terms), so that

---

1. In an accident involving a tractor-trailer, the accident is considered to have arisen out of the use of each, and insurance coverage on both the tractor and the trailer is potentially implicated. See *Blue Bird Body Co., Inc. v. Ryder Truck Rental, Inc.* (C.A.5, 1978), 583 F.2d 717, 726-727.

coverage under the main policy is not available. Attached to this policy is an MCS-90 endorsement with a coverage limit of $2.5 million. The significance of the MCS-90 endorsement to the trailer policy is the subject of these appeals.

{¶5} On January 24, 1997, plaintiffs-appellants Marie V. Lynch, administrator of the estate of Stephen M. Wiley, and Susan Reese, administrator of the estate of Justin L. Reese, filed a wrongful-death action in the Trumbull County Court of Common Pleas against various defendants who allegedly were at fault in the accident. In an amended complaint, appellants revised the list of defendants, including the insurance companies as defendants, and added a claim for declaratory judgment, seeking to establish the extent and amount of coverage available under the tractor and trailer policies. Although appellants in their initial complaint had included an allegation that negligent maintenance of the trailer contributed to the accident, appellants in their amended complaint dropped any allegation of wrongdoing by the trailer owner.

{¶6} All parties except Yob and Bath moved for summary judgment in the declaratory judgment portion of the action. Regarding the only issue pertinent to these appeals, appellants argued that coverage was available under the MCS-90 endorsement to the trailer policy. All appellees argued that coverage was unavailable. On that question, the trial court granted summary judgment to appellants, declaring that, although Bath and Yob were not insureds under the trailer policy, the MCS-90 endorsement to that policy applied and that coverage was available up to the $2.5 million policy limit. The trial court ordered the case to proceed to trial to determine appellants' damages and also determined under Civ.R. 54(B) that there was no just reason for delay in its judgment entry establishing the scope of insurance coverage.

{¶7} On appeal, the court of appeals reversed the judgment of the trial court pertaining to the trailer's MCS-90 endorsement, holding that there was no obligation for AIG to indemnify Bath and Yob under the trailer's MCS-90

endorsement for any damages appellants might recover against Bath and Yob. The court of appeals determined that "[b]y the plain language of the MCS-90 endorsement itself, there must be a final judgment against an 'insured' to trigger its provisions." The court of appeals went on to conclude that since neither Yob nor Bath, the only parties potentially liable for wrongful death, qualified as insureds in the underlying trailer policy, "the MCS-90 endorsement could not magically transform them into 'insureds' under the endorsement." The court of appeals found that appellees should have been granted summary judgment based on their argument that there was no coverage available to appellants under the MCS-90 endorsement to the trailer policy. The cause is now before this court pursuant to the allowance of discretionary appeals.

II

The MCS-90 Endorsement

{¶8} Under the Motor Carrier Act of 1980, Sections 29 and 30, Public Law No. 96-296, 94 Stat. 793, July 1, 1980, certain commercial motor carriers engaged in interstate commerce must register with the United States Secretary of Transportation and must comply with minimum financial responsibility requirements established by the Secretary of Transportation. Sections 13902(a)(1) and 31139, Title 49, U.S.Code. To that end, Section 13906(a)(1), Title 49, U.S.Code provides:

{¶9} "The Secretary may register a motor carrier under section 13902 only if the registrant files with the Secretary a bond, insurance policy, or other type of security approved by the Secretary, in an amount not less than such amount as the Secretary prescribes * * *. The security must be sufficient to pay, not more than the amount of the security, for each final judgment against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles, or for loss or damage to property (except property [being shipped] * * *), or both."

4

**{¶10}** See, also, Section 387.301, Title 49, C.F.R., a regulation related to the above authority, which provides that no motor carrier shall engage in interstate commerce unless certificates of insurance or other securities or agreements are filed with and accepted by the Federal Motor Carrier Safety Administration, "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles."

**{¶11}** Regulations prescribed by the Secretary of Transportation pursuant to Section 31139(b), Title 49, U.S.Code require a base coverage amount of at least $750,000, with more in some situations, to fulfill the financial responsibility requirements. Sections 387.7(a) and 387.9, Title 49, C.F.R. The regulations require that a specific endorsement form must be included in any insurance policy to satisfy the registration and financial responsibility requirements. This form, the MCS-90 endorsement, is set out at Section 387.15, Title 49, C.F.R., at Illustration I, and is titled "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980."[2]

**{¶12}** The MCS-90 endorsement provides:

---

2. An MCS-90 endorsement is often referred to as an ICC endorsement because its form was initially prescribed under statutes delegating some of the enforcement of their provisions to the Interstate Commerce Commission. However, the ICC was abolished by the ICC Termination Act of 1995, and its responsibilities were transferred to the Surface Transportation Board of the Department of Transportation. Public Law No. 104-88, Section 201, 109 Stat. 803, 932-934, December 1995. At that time, the registration and financial responsibility statutes at issue in this case were revised and renumbered. (In particular, Section 13906, Title 49, U.S.Code is similar in many respects to former Section 10927, Title 49, U.S.Code.) However, Congress provided that regulations issued by the ICC would "continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked in accordance with law." Public Law No. 104-88, Section 204(a), 109 Stat. 941. (See note following Section 701, Title 49, U.S. Code.) In 1996, current Section 387.301, Title 49, C.F.R., was redesignated to its present location. See 61 F.R. 54,706, 54,709. For our purposes here, the pertinent regulations have remained the same in all material terms since first prescribed pursuant to the Motor Carrier Act of 1980. For a discussion of the effect of the ICC Termination Act of 1995 on the federal regulatory scheme covering interstate motor carriers, see *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.* (1997), 117 Md. App. 72, 91-95, 699 A.2d 482.

**{¶13}** "In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  * * * [N]o condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.  However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.  The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."

III

Applicability of the MCS-90 Endorsement

**{¶14}** Courts that consider the applicability of an MCS-90 endorsement, a federally mandated endorsement to motor carrier insurance policies, construe its operation and effect as a matter of federal law. See *Canal Ins. Co. v. First Gen. Ins. Co.* (C.A.5, 1989), 889 F.2d 604, 610, modified on other grounds (C.A.5, 1990), 901 F.2d 45; *Ford Motor Co. v. Transport Indemn. Co.* (C.A.6, 1986), 795 F.2d 538, 545.

**{¶15}** In a recent decision, the United States Court of Appeals for the Ninth Circuit considered the applicability of an MCS-90 endorsement in a situation that was similar factually to the situation before us. In *John Deere Ins. Co. v. Nueva* (C.A.9, 2000), 229 F.3d 853, certiorari denied (2002), ___ U.S. ___, 122 S.Ct. 1063, 151 L.Ed.2d 967, a tractor-trailer driver allegedly negligently caused an accident. The tractor driver and its owner were uninsured. The trailer involved in the accident was owned by an unrelated company, and was insured by John Deere Insurance Company. Id.*,* 229 F.3d at 854. There was no allegation that the trailer owner was negligent.

**{¶16}** Pursuant to the terms of the main policy on the trailer at issue, coverage was not provided for the driver and owner of the tractor involved in the accident, but that policy included an MCS-90 endorsement. The insurer sought a declaratory judgment that it had no duty to indemnify its insured (the trailer owner) or the driver and owner of the tractor for any liability arising out of the accident. The district court granted the insurer's motion for summary judgment, finding that the MCS-90 endorsement did not create coverage for the driver and owner of the tractor. Id.*,* 229 F.3d at 854-855.

**{¶17}** On appeal, the parties seeking recovery for injury and damages caused by the accident contended that the insurer could not rely on the limiting provisions of the underlying policy to avoid indemnifying permissive users of

noncovered vehicles because the MCS-90 endorsement modified the definition of "insured" in the underlying policy. Id., 229 F.3d at 859. The Ninth Circuit reversed the judgment of the district court and found that the MCS-90 endorsement to the trailer's policy obligated the insurer to indemnify the driver and owner of the tractor. Id. at 860.

{¶18} The court stressed that "the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." Id., 229 F.3d at 857. The court proceeded to follow the analysis of the Tenth Circuit Court of Appeals in *Adams v. Royal Indemn. Co.* (C.A.10, 1996), 99 F.3d 964, which it stated involved "nearly identical facts." Id. at 858. In *Adams*, the Tenth Circuit found that in this situation the MCS-90 endorsement indirectly modifies the insurer's policy definition of "insured" to expand coverage to include any permissive users of insured vehicles. See 99 F.3d at 970.

{¶19} The MCS-90 endorsement explicitly overrides any "condition, provision, stipulation, or limitation" in the policy that would relieve the insurer from its duty to pay, to the limits of the endorsement, a judgment against the insured for negligent operation. But appellees argue that this case does not involve any "condition, provision, stipulation, or limitation," and instead involves the more fundamental question of who is an insured under an insurance policy. Appellees contend that the MCS-90 endorsement operates to negate exclusions from coverage but cannot transform noninsured parties into insureds. In addition, appellees argue that there can be no recovery under the trailer owners' MCS-90 endorsement because there can never be a final judgment against the trailer owners, since appellants have dropped any allegations of the trailer owners' own negligence.

{¶20} Furthermore, appellees argue that *John Deere Ins. Co. v. Nueva* and *Adams* are distinguishable from this case because those cases involved underlying policies that limited coverage to specifically described vehicles, while this case

8

involves a fundamentally different underlying policy limitation, that "truckers" other than employees of the named insured are not covered while using the trailer. However, appellees' readings of *John Deere Ins. Co. v. Nueva* and *Adams* are much too restrictive. The end result of both those cases is that, on these facts, "an MCS-90 endorsement requires an insurer to indemnify a permissive user of a non-covered" vehicle. *John Deere Ins. Co. v. Nueva*, 229 F.3d at 858; *Adams*, 99 F.3d at 971. The case sub judice involves a permissive user of a noncovered vehicle, the leased trailer at issue, and so the rule of *John Deere Ins. Co. v. Nueva* and *Adams* is fully applicable. That rule that emerges from those cases is that the MCS-90 endorsement should be read to eliminate *any* limiting clauses in the underlying policy restricting the scope of coverage. See *Adams*, 99 F.3d at 971; *John Deere Ins. Co. v. Nueva*, 229 F.3d at 859.

{¶21} We find that although there may be some factual differences between the case sub judice and the two federal appellate decisions (for example, that there is coverage available on the tractor in this case while there was not in *John Deere Ins. Co. v. Nueva* and *Adams*), the reasoning of those two cases fully applies to our determination. Furthermore, while appellees argue that the weight of authority favors a finding of no obligation to indemnify in this situation, for various reasons none of appellees' cases has the precedential value of those two decisions.

{¶22} First, appellees' basic argument is that the MCS-90 endorsement, the regulations giving rise to it, and the federal statutes authorizing the regulations all mandate by their explicit terms that there is no duty to indemnify a permissive user not covered by the underlying policy. However, this argument was specifically rejected by the holdings of *John Deere Ins. Co. v. Nueva* and *Adams*. Therefore, appellees' citation of cases such as *Del Real v. United States Fire Ins. Crum & Forster* (E.D.Cal.1998), 64 F.Supp.2d 958, affirmed without published opinion (C.A.9, 1999), 188 F.3d 512, 1999 WL 626619, are not as authoritative as the two federal appellate court decisions we follow. Furthermore, the district court in *Del*

*Real* held that the MCS-90 endorsement did not even apply because the trailer at issue in that case was not a motor vehicle licensed to carry property in interstate commerce. 64 F.Supp.2d at 964-965. Therefore, any consideration of the specifics of the MCS-90's provisions was surely dictum. See *Pierre v. Providence Washington Ins. Co.* (2001), 286 A.D.2d 139, 144, 730 N.Y.S.2d 550.

{¶23} Second, cases involving disputes between two insurance companies, unlike those involving an injured member of the public seeking recovery under a MCS-90 endorsement, do not implicate the key rationale behind the MCS-90 endorsement, which is the protection of the public. Therefore, any statements cited by appellees within decisions such as *Natl. Mut. Ins. Co. of the Dist. of Columbia v. Liberty Mut. Ins. Co.* (C.A.D.C. 1952), 196 F.2d 597, and *John Deere Ins. Co. v. Truckin' U.S.A.* (C.A.5, 1997), 122 F.3d 270 (both of which were principally disputes between insurance companies), for the point that only the named insured can be covered by an MCS-90 endorsement are of limited value to our consideration. For a compilation of cases concerning the allocation of losses when an MCS-90 endorsement is involved, see Annotation, Effect of Motor Carrier Act Provisions on Insurance and Indemnity Agreements (49 U.S.C.A. §§ 13906, 14102) in Allocating Losses Involving Interstate Motor Carriers (1999), 157 A.L.R.Fed. 549.

{¶24} Third, some of appellees' cited cases predate the present MCS-90 endorsement and its accompanying regulations and statutes. Although there are similarities between the current regulatory system and that in place prior to 1980, the Motor Carrier Act of 1980 also worked some significant changes to the regulatory scheme. Therefore, cases such as *Wellman v. Liberty Mut. Ins. Co.* (C.A.8, 1974), 496 F.2d 131, can be distinguished from the situation we consider.

{¶25} Fourth, state court decisions (particularly those of intermediate state appellate courts) interpreting the MCS-90 endorsement, which is mandated by federal law, do not have the persuasive value of decisions by federal circuit courts.

Therefore, cases such as *Powers v. Meyers* (1995), 101 Ohio App.3d 504, 655 N.E.2d 1358, and *Progressive Cty. Mut. Ins. Co. v. Carway* (Tex.App.1997), 951 S.W.2d 108, cited by appellees, are not as authoritative as the two federal circuit court decisions we follow.

{¶26} Finally, appellees argue that the reimbursement provision of the MCS-90 endorsement, which requires the insured to reimburse the insurer "for any payment that the company would not have been obligated to make under the provisions of the policy except for" the MCS-90 endorsement, is at odds with a holding that an insurer must indemnify a permissive user of a noncovered vehicle. They argue that because the insurer has no contractual relationship with such a user, the insurer would be unable to obtain reimbursement from that user. Thus the insurer would have to forgo reimbursement or seek reimbursement from its innocent insured. However, just as in the situation involving a dispute between two insurance companies discussed above, questions involving disputes between the insurer and the insured do not implicate the key purpose of the MCS-90, which is to protect members of the public, and, therefore, such questions are peripheral to our inquiry. These arguments based on the reimbursement provision were implicitly rejected in the two federal circuit court decisions we follow, particularly in *Adams*, 99 F.3d at 972, where the court stated, "In situations where the policy absent the endorsement did not insure the vehicle which caused the injuries, the endorsement explicitly requires that the insured reimburse the insurer because the insurer's payment to the injured motorist is a 'payment the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.' See 49 C.F.R. § 387.15. Thus, the public is protected by insurance and ultimate responsibility rests on the truckers, all as mandated by Congress * * *." For a case interpreting the reimbursement provisions of the MCS-90 in the context of an insurer seeking reimbursement from

its insured, see *T.H.E. Ins. Co. v. Larsen Intermodal Serv., Inc.* (C.A.5, 2001), 242 F.3d 667.

{¶27} In conclusion, we agree with the court in *John Deere Ins. Co. v. Nueva*, 229 F.3d at 860, which stated that finding the driver and owner of the tractor in this type of situation to be insureds under the MCS-90 endorsement allows the MCS-90 endorsement to serve "the purpose it was expressly designed to serve, modifying a policy to insure the availability of insurance for negligently injured members of the public." As in that case, interpreting the endorsement in the way advocated by appellees "would frustrate this express Congressional goal." Id.

{¶28} Accordingly, the judgments of the court of appeals are reversed, and the trial court's declaratory judgment that coverage is available pursuant to the trailer's MCS-90 endorsement up to the endorsement's coverage limit of $2.5 million is reinstated.

Judgments reversed.

Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

MOYER, C.J., T. BRYANT and LUNDBERG STRATTON, JJ., dissent.

THOMAS F. BRYANT, J., of the Third Appellate District, sitting for COOK, J.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶29} I respectfully dissent from the majority's expansive interpretation of the MCS-90 endorsement. I believe that federal legislation, the language of the endorsement, and the intent of the parties support the opposite conclusion.

{¶30} The federal government's Motor Carrier Act of 1980 established minimum financial responsibility requirements for motor vehicles used in interstate commerce. Sections 13902(a)(1) and 31139, Title 49, U.S.Code. The Act requires that a motor carrier have sufficient insurance to pay a final judgment against it. Section 13906(a)(1), Title 49, U.S.Code. The MCS-90 endorsement, required by the 1980 MCA, is required to be attached to a liability insurance policy issued to

an interstate motor carrier. Section 387.15, Title 49, C.F.R. Its primary purpose is to protect the public by ensuring that a carrier has independent financial responsibility for the losses that arise out of that carrier's trucking operations.

{¶31} This is evident from the standard language the government placed in the MCS-90. It provides that the insurer agrees to pay any *final judgment recovered against the insured* from public liability resulting from negligence in the operation, maintenance, or use of motor vehicles that are subject to the Motor Carrier Act of 1980. The MCS-90 also provides that the *insured agrees to reimburse the insurer for any payment made* under the MCS-90 on account of an accident, claim, or suit that the insurer would not have had to make but for the MCS-90. Therefore, the MCS-90 protects the injured person who has obtained a judgment against the insured by ensuring that the judgment will be paid. For example, when an injured person obtains a judgment against an insured yet the insured's primary policy is not obligated to cover the loss, the insurer will pay the judgment against the insured under the MCS-90 regardless of any coverage defenses or issues involving other insurance allocation. Under the MCS-90, the insurer may then recoup its losses from its insured.

{¶32} The majority follows *John Deere Ins. Co. v. Nueva* (C.A.9, 2000), 229 F.3d 853, certiorari denied (2002) ____U.S.___, 122 S.Ct. 1063, 151 L.Ed.2d 967, and *Adams v. Royal Indemn. Co*. (C.A.10, 1996), 99 F.3d 964, but acknowledges that both are factually different from this case. In *Adams*, the injured party was unable to collect the judgment he had obtained against the tortfeasor; in *John Deere,* the alleged tortfeasor did not have insurance and presumably would be unable to pay a judgment.. The *Adams* court acknowledged that the tortfeasor was not insured under the trailer's primary insurance policy, but expansively construed the MCS-90 to cover the unpaid judgment. The *Adams* court reasoned that the policy behind the MCS-90 was to protect against *uninsured* regulated vehicles. Id. at 968. *John Deere* followed the reasoning in *Adams* because the driver of the

tractor in *John Deere* was uninsured and coverage under the MCS-90 was deemed necessary to achieve its purpose of making any judgment against him collectible. *John Deere*, 229 F.3d at 859-860.

{¶33} However, just one year earlier, the same court reached the opposite result when presented with circumstances more similar to the case before us. In *Del Real v. United States Fire Ins. Crum & Forster* (C.A.9, 1999), 188 F.3d 512, 1999 WL 626619, the Ninth Circuit affirmed without a published opinion the district court's decision to deny coverage under the MCS-90 to an injured party who had collected the insurance proceeds from the tractor's insurer. *Del Real v. United States Fire Ins. Crum & Forster* (E.D.Cal.1998), 64 F.Supp.2d 958. Del Real obtained a judgment against the driver and owner of the tractor, who had admitted liability for the accident. The judgment was paid in part by the owner's insurer. Del Real attempted to collect the remainder of the judgment from the insurance covering the trailer after its owner had been dismissed from the underlying tort case. The district court held that the plaintiff was not entitled to recover under MCS-90 because neither the driver nor the owner of the tractor was an insured under the MCS-90 endorsement covering the trailer, and the endorsement obligates the trailer's insurer only to pay "any final judgment recovered against the insured." Id. at 964. I believe that the facts of *Del Real* are more closely aligned with the situation before us.

{¶34} I also believe that the majority's decision to expand the MCS-90's coverage to reach permissive users defies both logic and common sense. In this case, the negligence of the driver of the tractor was undisputed and the tractor's liability insurance policy will indemnify him and the tractor owner up to the policy limits. Allegations of negligence made against the trailer's owner have been dropped. The driver and owner were merely permissive users of the trailer and not considered insureds for purposes of the trailer's liability insurance or MCS-90 endorsement. There is no final judgment against the trailer's insured.

**{¶35}** Nevertheless, as a result of today's opinion, the trailer's insurer will have to pay a judgment against a party other than its own insured. Furthermore, the insurer now has a right under the MCS-90 to recoup the payment from its insured for another person's negligence. The majority acknowledges this problem as a peripheral issue that it need not consider. It is, however, an example of the majority's overreaching interpretation and the illogical results it yields.

**{¶36}** The word "insured" in the MCS-90 refers to the insured identified in the body of the primary liability policy. *Campbell v. Bartlett* (C.A.10, 1992), 975 F.2d 1569; *Natl. Mut. Ins. Co. of D.C. v. Liberty Mut. Ins. Co.* (C.A.D.C.1952), 196 F.2d 597; *Del Real*, 64 F.Supp.2d 958. I do not agree that the meaning of "insured" may be expanded to include permissive users who are not insured under the policy. The purpose of the MCS-90, as the majority stresses, is the protection of the public. However, it must be within the confines of the contractual relationship established by the MCS-90. Therefore, for the foregoing reasons, I respectfully dissent and would affirm the judgments of the court of appeals.

MOYER, C.J., and T. BRYANT, J., concur in the foregoing dissenting opinion.

———————————

Clair M. Carlin, for appellants.

Reminger & Reminger Co., L.P.A., James J. Turek and Brian D. Sullivan, for appellees Lawrence P. Yob, Bath Transport, Inc., Express Companies of America, Inc., Central Transport, Inc., Centra, Inc., and GLS Leasco of Michigan, Inc.

Eastman & Smith, Ltd., David F. Cooper and Matthew D. Harper, for appellees American International Group, Inc., and National Union Fire Insurance Company of Pittsburgh, Pa.

Robert W. Kerpsack Co., L.P.A., and Robert W. Kerpsack, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

———————————